**UNITED STATES of AMERICA, Plaintiff-Appellee,**

v.

**Roberto Nicolas CASTRO, Defendant-Appellant.**

**No. 91–50369.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1992.

Decided Aug. 17, 1992.

James R. Bostwick, Jr., Claremont, Cal., for defendant-appellant.

Peter G. Spivack, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before: FARRIS, WIGGINS, and FERNANDEZ, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Roberto Castro appeals from the district court's judgment following a jury verdict against him for conspiracy and five counts of possession with intent to distribute cocaine. He argues that: 1) the district court abused its discretion in refusing to allow him to substitute new counsel; 2) his convictions are not supported by sufficient evidence; 3) the use of the amended Sentencing Guidelines in his case was a violation of the Ex Post Facto Clause; and 4) the district court erred in increasing his offense

level for being a leader of the conspiracy. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

## DISCUSSION

### I. The District Court did not Abuse its Discretion in Denying Castro's Motion to Substitute Counsel

 Castro claims that the district court erred in refusing to permit him to substitute counsel prior to trial. A district court's refusal to substitute counsel is reviewed for abuse of discretion. *United States v. Schaff,* 948 F.2d 501, 503 (9th Cir.1991). There are three elements which must be examined in reviewing a district court's denial of a substitution motion: (1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the defendant's complaint; and (3) whether the asserted conflict was so great as to result in a complete breakdown in communication and a consequent inability to present a defense. *United States v. Garcia,* 924 F.2d 925, 926 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2809, 115 L.Ed.2d 982 (1991).

 An examination of the three required elements reveals that the district court properly denied the motion. Castro's motion was untimely. The motion was made only three days before the trial was supposed to commence. Castro initially indicated to his counsel that he wanted other counsel two weeks before the trial date. Castro's counsel told him that he would have to request substitution from the district court. Yet, neither Castro nor his counsel attempted to request substitution until three days prior to the trial date. The court, in ruling on the motion, noted that granting the motion would require a continuance to allow the new counsel to become familiar with the case. The court also noted that a continuance would result in a waste of the entire week of the court's time that had been set aside for the trial, as nothing else could be scheduled on such short notice.

We have consistently held that a district court has broad discretion to deny a substitution motion made on the eve of trial, particularly where it would require the grant of a continuance. *United States v. Schaff,* 948 F.2d at 504. Motions made on the first day of trial have been held to be untimely. *United States v. McClendon,* 782 F.2d 785, 789 (9th Cir.1986). Even motions filed six days prior to trial have been held to be untimely. *United States v. Garcia,* 924 F.2d at 926. Here, the motion was filed only three days before trial and would have necessitated a continuance. Thus, the motion was untimely.

Second, the district court conducted the necessary inquiry into Castro's complaint. The district court specifically questioned Castro as to why he wanted new counsel. Castro identified three areas of dissatisfaction with his attorney. He complained that his attorney was not interested in the case, that he had difficulty communicating with his attorney who did not speak Spanish, and that his attorney, did not have the experience necessary to handle the case.

The district court examined Castro's attorney as to whether he had had enough time to prepare the case and whether he was prepared to go to trial. Counsel informed the court that he had had enough time to prepare and was prepared to go to trial. Furthermore, counsel did not indicate that he was not interested in proceeding in the case.

The district court also examined counsel on the issue of communication. Counsel indicated that his inability to speak Spanish hindered communication with Castro. The district court took steps to ensure that an interpreter would be made available during breaks and the lunch hour to facilitate communication.

Lastly, the district court examined counsel as to his legal experience in drug cases. The district court also asked about counsel's overall trial experience and experience with the Central District. The district court concluded that counsel had sufficient experience to try the matter competently.

The district court conducted a sufficient inquiry. The court allowed the defendant

to list all the concerns which he had about his counsel. The court then examined counsel with respect to each of Castro's concerns. Castro complained that the district court should have examined him with respect to each of his concerns. There is no requirement that the court's inquiry include a more extensive examination of the defendant. Furthermore, the court allowed Castro to express freely his concerns first. There was no necessity to examine Castro further.

Third, the claimed conflict with counsel was not so severe that it prevented all communication and thereby the ability to conduct a defense. The district court examined counsel on the issue of communication. Counsel informed the court that the language barrier created problems but did not indicate that there were any other factors responsible for any communication problem. Castro had not refused to speak to counsel. Neither did Castro allege any personal conflict that affected his communication with counsel. In fact, during the trial, Castro utilized the services of the court appointed interpreter for the purpose of conversing with his attorney. As the government points out, the obvious implication of this is that Castro and his counsel were communicating. Lastly, Castro advanced no evidence that any lack of communication prevented the presentation of his defense. The defense did not present a case at trial, resting after the government's presentation. However, that decision was a strategic decision based on the defense's perception that the government's case was weak because there was no direct evidence linking Castro to the cocaine.

All three required elements support the district court's decision to deny the substitution motion. Therefore, the district court did not abuse its discretion in denying the motion.

## II. There was Sufficient Evidence for the Jury to Find that Castro was a Member of the Conspiracy

■ Castro claims that there was insufficient evidence to allow the jury to conclude that he committed an overt act in furtherance of the conspiracy. Castro also claims that there was insufficient evidence to establish that he possessed cocaine. We have held that there is sufficient evidence to support a conviction where, reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Adler,* 879 F.2d 491, 495 (9th Cir.1988).

### A. The Conspiracy Charge

Castro argues that there is insufficient evidence to support his conviction for conspiracy. He contends that the mere fact that he associated with the coconspirators is not enough to find that he was a member of the conspiracy. Castro essentially contends that he cannot be convicted without some *direct* evidence of his involvement in the conspiracy. Castro's argument is meritless.

■ It is well established that where the existence of a conspiracy has been established, the government need only show a slight connection to it, beyond a reasonable doubt, in order to convict a defendant of conspiracy. *United States v. Stauffer,* 922 F.2d 508, 514–15 (9th Cir.1990); *United States v. Ramirez,* 710 F.2d 535, 548 (9th Cir.1983). The government does not have to present *direct* evidence. Circumstantial evidence and the inferences drawn from that evidence will sustain a conspiracy conviction. *United States v. Hernandez,* 876 F.2d 774, 777 (9th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). Lastly, the defendant need not have committed an overt act in furtherance of the conspiracy; he may still be convicted so long as one of his coconspirators did so. Manual of Model Jury Instructions for the 9th Circuit, Instruction No. 8.05A (1989).

■ There is ample circumstantial evidence in this case to support the jury's conclusion that Castro was a member of the conspiracy. The government presented evidence of a pattern of behavior by Castro prior to each seizure of cocaine. The jury could reasonably determine that prior to each of the first four seizures, Castro coordinated meetings between individuals and

vehicles loaded with cargo and large tractor-trailers which were later apprehended carrying large amounts of cocaine. Prior to the last seizure, Castro was observed dropping off a van loaded with cargo. The van was followed to an apartment where large amounts of cocaine were found in a container which had been taken from the van. The jury could have reasonably concluded that the cocaine seized in the apartment had come from the van that Castro had dropped off. Castro claims that there are innocent explanations for his conduct prior to each seizure. This may be true. However, the jury could reasonably infer from the pattern of conduct that the innocent explanations were not credible. It is a bit much to expect the jury to believe that Castro was in the wrong place at the wrong time so many times. Viewing the evidence in the light most favorable to the government, it is clear that there was sufficient evidence to support the conspiracy conviction.

### B. The Possession Charges

Castro claims that there was insufficient evidence to convict him of the possession charges. He contends that there was insufficient evidence that he knowingly possessed cocaine, and that the substance was in fact cocaine. Again, Castro essentially complains at the lack of direct evidence against him. His argument is meritless.

■ There was ample circumstantial evidence from which the jury could conclude that Castro possessed the cocaine seized in the four tractor-trailers. He was observed driving heavily loaded vehicles into a warehouse. The tractor-trailers then were driven into the warehouse. After a period of time, Castro's vehicle would leave empty. Then the tractor-trailers would leave. The trucks would then be stopped and large amounts of cocaine discovered. It was reasonable for the jury to infer that the cocaine had come from the vehicles Castro was driving.

The evidence in the last seizure was even more clear. Castro drove a heavily loaded van to a parking lot and left it. The van was then picked up by another coconspirator. The van was driven to an apartment where its contents were unloaded. The apartment was then raided and large amounts of cocaine were discovered in one of the containers unloaded from the van. The clear inference is that the cocaine came from the van which had been in Castro's possession.

Nor can Castro seriously claim not to have known about the cocaine. Government experts testified that that amount of cocaine, valued in the millions of dollars, would have never been entrusted to an unknowing dupe. Based on that testimony the jury reasonably could have found that Castro knowingly possessed the cocaine.

Castro also claims that there was no evidence to prove that the substance was in fact cocaine. He claims that the lab only tested packages from one of the seizures. The record clearly reveals that the lab tested packages from each of the seizures. There was also circumstantial evidence admitted which supported the jury's conclusion that the substance was cocaine. Sgt. Rodig testified about the markings on the packages and their significance. Thus, taking this evidence in a light most favorable to the government, there was sufficient evidence to support the possession convictions.

### III. Application of the Sentencing Guidelines

■ Castro claims that the district court erred in applying the amended Sentencing Guidelines as the crime occurred prior to their effective date. He contends that this was a violation of the Ex Post Facto Clause. The government contends that the conspiracy was an ongoing offense which continued after the effective date of the amended Guidelines and therefore, the amended Guidelines should be applied. Ex Post Facto challenges are reviewed de novo. *United States v. Calabrese*, 825 F.2d 1342, 1346 (9th Cir.1987). This is an issue of first impression in this circuit. However, there are two closely analogous cases decided by this court which suggest that there is no Ex Post Facto problem here.

In *United States v. Calabrese*, 825 F.2d 1342 (9th Cir.1987), we addressed the issue of whether the enhanced penalties of the Comprehensive Crime Control Act of 1984 could be applied to a conspiracy which continued after the effective date of the Act. The defendants contended that application of the Act would violate the Ex Post Facto Clause. We rejected that argument, finding that because the conspiracy continued after the effective date of the Act, the enhanced penalty applied.

In *United States v. Gray*, 876 F.2d 1411 (9th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990), we addressed the issue of whether the Sentencing Guidelines applied to offenses that were initiated before their effective date but were completed after that date. The defendant in that case failed to appear in court prior to the effective date. The defendant was arrested after that date. Failure to appear, like conspiracy, is a continuing offense. We found that because the crime continued after the effective date of the Guidelines, the Guidelines applied to the offense.

The reasoning of the above cases clearly applies in this case. Conspiracy is a continuing offense. It is presumed to continue until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy. *United States v. Bloch*, 696 F.2d 1213, 1215 (9th Cir.1982). Here, the object of the conspiracy was not defeated until the final seizure of cocaine and the arrest of the coconspirators. That occurred after the effective date of the amended Guidelines. Therefore, the amended Guidelines apply to this offense.

Furthermore, every circuit which has addressed this issue has reached the same result. *United States v. Chambers*, 944 F.2d 1253, 1269–70 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992); *United States v. Moscony*, 927 F.2d 742, 754–56 (3d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991); *United States v. Wayne*, 903 F.2d 1188, 1196–97 (8th Cir. 1990); *United States v. Terzado–Madruga*, 897 F.2d 1099, 1124–25 (11th Cir.1990); *United States v. Williams*, 897 F.2d 1034, 1039–40 (10th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991); *United States v. Sheffer*, 896 F.2d 842, 844–45 (4th Cir.), *cert. denied*, 111 S.Ct. 432, 112 L.Ed.2d 416 (1990); *United States v. Story*, 891 F.2d 988, 995 (2d Cir. 1989); *United States v. White*, 869 F.2d 822, 826 (5th Cir.), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). Therefore, we find that there was no Ex Post Facto violation with respect to the conspiracy count.

However, the amended Guidelines were also applied to the possession offenses as well, Counts IV, VI and VII. Their application to the possession offenses, which occurred prior to the effective date of the amended Guidelines, was error. We reject the government's contention that these offenses were continuing offenses. We likewise reject the government's claim that because the conspiracy lasted beyond the effective date of the amended Guidelines that all other crimes committed as part of the conspiracy should be deemed to have lasted beyond that date. These arguments are illogical. Thus, we remand the action to the district court to resentence Castro under the 1988 Guidelines on Counts IV, VI and VII.

### IV. The District Court's Finding that Castro was a Leader in the Conspiracy was not Clearly Erroneous

Castro contends that there was no evidence to indicate that he had a leadership role in the conspiracy. As above, Castro essentially complains that there was no *direct* evidence that he was the leader of the conspiracy. A district court's finding that a defendant was a leader in the offense is reviewed for clear error. *United States v. Carvajal*, 905 F.2d 1292, 1295 (9th Cir.1990).

Sentencing Guideline § 3B1.1(a) provides for a four offense level increase if the defendant was an organizer or leader of the criminal activity. The commentary to this section indicates that the court should consider such factors as the exercise of

decision-making authority, the nature of the participation in the offense, recruitment of accomplices, right to a larger share of the profits, degree of participation in planning, the nature and scope of the activity and the degree of control and authority exercised over others in determining whether the defendant was a leader. Sentencing Guidelines § 3B1.1, commentary. Analyzing these factors, it is clear that Castro was a leader of the conspiracy.

 The circumstantial evidence suggests that Castro exercised the decision-making authority in the conspiracy. The loading of the cocaine seemed to occur at his direction. He was the only member of the conspiracy present at all the loadings of the cocaine into the tractor-trailers. Castro delivered the cocaine in four of the five seizures. Given the amount of cocaine involved, the fact that Castro appeared to control possession of it, the degree of planning which had to go into the offense and the fact that events seemed to occur at Castro's bidding, the district court could properly conclude that he was the leader of the conspiracy. The district court did not err in finding that Castro was the leader of the conspiracy.

Therefore, the judgment of the district court is hereby, AFFIRMED in part, REVERSED in part, and REMANDED for resentencing under the pre-November 1, 1989 Sentencing Guidelines on Counts IV, VI and VII.