8 F.3d 33
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
Everardo ZUNIGA-ROSALES, Francisco Contreras-Cardenas,
Defendants-Appellants, Cross-Appellee.
 Nos. 92-10399, 92-10556 and 92-10618.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 9, 1993.
Decided Oct. 20, 1993.
 
 1
 Before: REINHARDT and LEAVY, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 On October 8, 1991, defendants Miguel Lopez-Manrriguez, Francisco Contreras-Cardenas, Everardo Zuniga-Rosales and Luis Leon-Diaz were indicted on two criminal counts, conspiracy to possess with intent to distribute heroin (count I) and possession with intent to distribute heroin (count II). On April 13, 1993 the jury returned the following verdicts: Lopez-Manrriguez had a hung jury as to count I and was found not guilty on count II; Diaz-Leon was found not guilty on both counts; Contreras-Cardenas had a hung jury as to Count I and was found guilty on count II; and Zuniga-Rosales was found guilty on both counts. Defendants Zuniga-Rosales and Contreras-Cardenas timely appeal from their convictions and sentences.[1] In addition, the United States cross-appeals from the sentence given Contreras-Cardenas. The claims will be considered by the Court seriatim.
 
 
 4
 Appellant Zuniga-Rosales first asserts that his convictions for conspiracy to possess and possession with intent to distribute heroin should be reversed due to insufficient evidence. When timely objection is made to the sufficiency of the evidence our duty is to assess whether, viewing the evidence in a light most favorable to the government, a rational trier of fact could have found defendant guilty of the crime(s) charged beyond a reasonable doubt. United States v. Restrepo, 930 F.2d 705, 708 (9th Cir.1991). However, when a defendant fails to timely object at trial, such as is the case here, the Court reviews for plain error. United States v. Floyd, 945 F.2d 1096, 1098 (9th Cir.1991). We have reviewed the evidence and conclude that the evidence was sufficient to support appellant's conviction on both counts.
 
 
 5
 Next, appellant asserts that the district court wrongly denied a defense motion to dismiss or otherwise preclude the testimony of government informant Jose Aguilar[2] due to the government's alleged failure to comply with the district court's discovery orders. We review for an abuse of discretion a district court's exercise of its inherent supervisory power to preclude testimony at trial or to dismiss an indictment. United States v. Jacobs, 855 F.2d 652, 655 (9th Cir.1988).
 
 
 6
 That the federal courts wield supervisory powers to redress patent unfairness and prejudice in criminal trials there can be no doubt. Indeed, as noted by Zuniga-Rosales, in United States v. Roybal, 566 F.2d 1109 (9th Cir.1977), we reversed the conviction of a defendant when the government, in violation of the trial court's broad discovery order, failed to reveal to defendant that it was aware of a narcotics buy independent of those otherwise known to defendant. The government waited until the informant was on the witness stand and then adduced the testimony without any warning to defendant. We held that such behavior "seriously prejudiced" defendant's "opportunity to prepare his defense" when he was indicted only on a single conspiracy count and the surprise testimony was employed to implicate him in a sale that was not the subject of the indictment. We proceeded to state that:
 
 
 7
 Without this evidence the jury would only have heard that he had been seen in the company of other codefendants, that he had been using narcotics, and that he made statements that might be construed as indicating that he was aware of the codefendant's trafficking. There is no other evidence in the record of any sale by him and no narcotics were found in his possession at the time of his arrest.
 
 
 8
 Id. at 1110.
 
 
 9
 In our view the prejudice, if any, accruing to Zuniga-Rosales pales in comparison to that suffered by the defendant in Roybal. Here, the district court, on December 9, 1991, ordered that "any agreements with respect to the informant, any compensation, any record that the informant--criminal record that the informant has, that information be provided to defense counsel 10 working days before the trial, together with any other Brady information, or Rule 16 information...." The record also shows that from December 9, 1991 to March 31, the latter date being during the trial, the court was required to reassert its discovery order as to Aguilar on four occasions. Exemplary of the government's inappropriate behavior is the fact that on March 26, 1992, one day before trial, Aguilar's arrest was first disclosed by the government. On March 27, 1992, the government provided defense counsel with five previous cases in which Aguilar had been involved, and at the same time related that there were forty-four other cases in which Aguilar was involved, the exact nature of his involvement being uncertain.
 
 
 10
 Notwithstanding the district court's characterization of the government's behavior as "unacceptable," an undeniably apt description, it is nonetheless true that the testimony of Jose Aguilar, who was the subject of the discovery order, was not nearly so important to the government's case as that of the informant in Roybal. Indeed, Agents Humberto Rodriguez and Rudy Casillas, as well as Zuniga-Rosales' co-defendants, provided such substantial testimony as to mitigate the prejudice as to appellant. Furthermore, the record amply demonstrates that Aguilar was the subject of extensive impeachment on numerous other bases. In sum, although the government's behavior with respect to compliance with the discovery order was in no way exemplary, and is not encouraged, we find no error sufficient to warrant reversal of appellant's conviction.
 
 
 11
 On a related basis, Zuniga-Rosales claims that the district court erred in denying his motion of March 31, 1992, for mistrial and motion for dismissal on the basis of outrageous government conduct. The basis for the motion, related by defense counsel David Ochoa at the motion hearing, was as follows. Ochoa received a letter dated March 26, 1992, in which the prosecutor, Assistant United States Attorney Vincent Kirby, stated that informant Aguilar had been arrested in 1984 while working on an undercover assignment in Nogales, Arizona. In the letter, Kirby further explained that Aguilar was detained for drugs, returned to Phoenix and then released in Tucson, after the government explained the circumstances. During the hearing, the court commented that the facts just described conformed with Aguilar's trial testimony. However, Ochoa proceeded to relate to the court that he thereafter received a phone call from Kirby, informing him to disregard the letter because the information was incorrect. Kirby stated that at the time of the arrest Aguilar was not on government assignment. On this basis, Ochoa argued that someone within the government was providing incorrect and misleading information to the defense, precluding examination and impeachment of Aguilar at trial.
 
 
 12
 On April 1, 1992, Ochoa renewed his motion, explaining to the court that there was nothing in the files of the Drug Enforcement Administration (DEA) relating to the 1984 arrest of Aguilar. This information, Ochoa argued, directly contradicted the testimony of Aguilar at trial. In short, Ochoa argues that the record showed that Aguilar had engaged in misconduct by lying and providing misleading and incorrect information with regard to his arrest history. The court, however, denied the motion, concluding that the 1984 arrest of Aguilar was a collateral matter going only to impeachment.
 
 
 13
 We review a district court's denial of a motion for mistrial for an abuse of discretion. United States v. Rush, 749 F.2d 1369, 1371 (9th Cir.1984). The standard of review attending a district court's denial of a motion to dismiss based upon the court's supervisory powers is also abuse of discretion. United States v. Jacobs, 855 F.2d 652, 655 (9th Cir.1988). "A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir.1991).
 
 
 14
 Under the circumstances, we fail to see how the government's behavior rises to a violation of due process or otherwise was so egregious as to violate a constitutional or statutory right such as to compel use of the court's supervisory powers. Defendant was timely notified of the erroneous information and the information, in any event, was collateral and therefore no prejudice accrued. Furthermore, the weakness of appellant's argument of government outrageousness is highlighted by defense counsel's own admission during the motion hearing that the error did not result from any fault of the DEA or the prosecution.
 
 
 15
 Next, Zuniga-Rosales contends that the court erred in its denial of his motion of April 2, 1992, to reopen his case, subsequent to all parties resting, and his motion for a mistrial after the court denied this motion. The gravamen of the claim here is that after the defense rested, Aguilar testified that he permitted his wife to inscribe her social security number on his application for a telephone beeper service, and that the number was valid. Later, both the government and the defense stipulated that in fact the number was invalid. Defense counsel thereupon moved to reopen, seeking to subpoena Aguilar's wife and have her testify at trial to ascertain whether she had indeed provided her social security number on the application. Additionally, defense counsel wished to reopen in order to further cross-examine Aguilar on the social security number issue.
 
 
 16
 Denial of a motion to reopen a case is reviewed for an abuse of discretion. United States v. Kelm, 827 F.2d 1319 (9th Cir.1987). A like standard of review attends review of denials of motions for mistrial. United States v. Davis, 932 F.2d 752 (9th Cir.1991). We conclude that the district court's denial of the motions to reopen and for a mistrial was appropriate; any examination concerning the social security number amounted, at best, to impeachment on a collateral matter. In addition, the record shows that appellant successfully employed numerous other bases to impeach the credibility of Aguilar, including the government's provision of assistance to Aguilar in immigration matters, the substantial amounts of money Aguilar previously received from the government for drug-related investigations, and Aguilar's failure to file income tax returns.
 
 
 17
 Finally, appellant's proffer of United States v. Simtob, 901 F.2d 799 (9th Cir.1990), where we reversed defendant's conviction due to a failure of the trial court to exercise its discretion in consideration of a motion to reopen, is inapt. The basis for the motion in Simtob was the late revelation of a tape recording that supposedly indicated that a key government witness perjured himself. Finding that the trial court never reviewed the tape and therefore essentially failed to exercise any discretion at all, we concluded that the tape "contained information bearing sufficiently on the credibility of the prime prosecution witness that it might well have affected the outcome of the case." Id. at 804. Here, the impeachment value of the social security information pales in relative significance. In sum, the district court here fully and properly exercised its discretion and in so doing committed no error.
 
 
 18
 Next, Zuniga-Rosales argues that the district court erred in instructing the jury on an essential element of count II, possession with intent to distribute heroin in violation of 21 U.S.C. § 841, because the court failed to instruct the jury that the government was required to prove that he knowingly participated in the sale or distribution of heroin. A review of the record shows that the court instructed on possession as follows: "It does not matter whether the defendant knew that the substance was heroin. It is sufficient that he knew that it was some kind of controlled substance."
 
 
 19
 Because appellant failed to object to the supposedly erroneous instruction, we review for plain error. United States v. Marsh, 894 F.2d 1035 (9th Cir.1989), cert. denied, 493 U.S. 1083 (1990). In asserting error, Zuniga-Rosales argues that our holding in United States v. Davis, 501 F.2d 1344 (9th Cir.1974), was in error. In particular, he asserts that the following statement of the law is incorrect: "The government is not required to prove that the defendant actually knew the exact nature of the substance with which he was dealing." Id. at 1346. We decline the invitation to reverse. It is well-settled that unless there exists intervening Supreme Court authority of an undermining nature or a contrary holding of an en banc panel, our precedent remains the law of this Circuit. See Le Vick v. Skaggs Cos., 701 F.2d 777, 778 (9th Cir.1983). See also United States v. Jewell, 532 F.2d 697, 698 (9th Cir.1976) (en banc ) (where we reaffirmed the position enunciated in Davis, stating that "a defendant who has knowledge that he possesses a controlled substance may have the state of mind necessary for conviction even if he does not know which controlled substance he possesses."), cert. denied, 426 U.S. 951 (1976). In sum, we find no plain error in the instruction rendered by the district court in this regard.
 
 
 20
 Next, Zuniga-Rosales argues that the trial court violated his Sixth Amendment right to a fair trial when it excluded his wife, who had been a witness, during closing arguments. The district court denied his motion for a new trial on this basis. The reason stated by the court was that in excluding all witnesses from the trial proceedings, including closing arguments, it wished to prevent witnesses from hearing the testimony of one another, an outcome likely to occur on the basis of summations during closing arguments.
 
 
 21
 We review a district court's denial of a motion for a new trial for an abuse of discretion. United States v. Rush, 749 F.2d 1369, 1371 (9th Cir.1984). The Sixth Amendment guarantees that a criminal defendant shall enjoy "the right to a speedy and public trial." "The right to a public trial, however, is not absolute and must give way in some cases to other interests essential to the fair administration of justice." United States v. Sherlock, 962 F.2d 1349, 1356 (9th Cir.1992). In Press-Enterprise v. Superior Court of California, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984), the Supreme Court stated as follows:
 
 
 22
 The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.
 
 
 23
 A reviewing court must ascertain whether the trial court had a "substantial" reason for the partial closure of a trial. Sherlock, 962 F.2d at 1357. In the case at bar, we find that this test is amply satisfied. As stated, the court reasonably wished to avoid contamination of witness testimony in the event another trial was required. To achieve this end, only witnesses were excluded, regardless of their relationship to the parties. The courtroom remained open to all other interested parties and there was no wholesale exclusion of family members, as was the case in Sherlock, a case cited in support by appellant. In sum, we find that the district court did not abuse its discretion in excluding appellant's wife from the courtroom during closing arguments. See also United States v. Juarez, 573 F.2d 267 (5th Cir.1978), cert. denied, 439 U.S. 915 (1978) (upholding trial court's decision to exclude witnesses from closing arguments under Federal Rule of Evidence 615); Fed.R.Evid. 615 ("At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.").
 
 
 24
 Finally, Zuniga-Rosales asserts that his convictions must be reversed because the government violated the requirements of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As discussed above, on November 12, 1991, defense counsel filed a motion for full discovery pertaining to the government's informant, Aguilar. On December 9, 1991, the court ordered the government to make the following disclosures within ten days of trial: any agreements with informant; any compensation records; any criminal record of the informant; and any Brady and Rule 16 material. As of March 23, 1992, appellant had not received the information and filed a motion to compel disclosure. The court again ordered the government to disclose this information. On March 25, 1992, appellant filed a motion to preclude testimony of the informant because the government allegedly failed to fully disclose pertinent information. On March 26, 1992, one day before trial, the government disclosed the arrest record of Aguilar, causing the court to characterize the government's behavior as "inexcusable." On the same day appellant filed a motion to dismiss because of the government's alleged failure to comply. The court again ordered the government to comply fully with the order. On March 27, as noted supra, the government informed appellant of five cases in which Aguilar had been involved and that there were forty-four other cases in which the government was uncertain of Aguilar's involvement. After receiving some further information of a similar nature, appellant, during the trial proceedings on March 31, again moved to dismiss due to failure to comply. The court again ordered compliance, noting for the record the "seeming misunderstanding of the Court's order or the refusal to provide information in a timely fashion. This is just unacceptable."
 
 
 25
 The gravamen of appellant's claim here is that Brady materials were turned over in an untimely fashion, rather than being withheld altogether. We have previously stated that "Brady does not necessarily require that the prosecution turn over exculpatory materials before trial. To escape Brady sanction, disclosure 'must be made at time when disclosure would be of value to the accused.' " United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988) (citation omitted). Untimely Brady disclosure requires reversal only if it so prejudices appellant's preparation or presentation of his defense that he was prevented from receiving a fair trial. United States v. Shelton, 588 F.2d 1242, 1247 (9th Cir.1978), cert. denied, 442 U.S. 909 (1979).
 
 
 26
 We review on a de novo basis challenges based on a Brady violation. United States v. Gordon, 844 F.2d 1397, 1402 (9th Cir.1988). While we do not condone the government's behavior in the case at bar, we fail to find a Brady violation. As a threshold matter, the impeachment information was not material. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985). As discussed above, Aguilar's testimony, while certainly significant, was not so important such that any hindrance to impeachment experienced by the late provision of government information as to Aguilar satisfies Bagley. Defendant's trial consumed the better part of two weeks and Aguilar was on the witness stand for two days. Furthermore, Aguilar was recalled by the defense and subjected to further cross-examination. In sum, Brady was not violated insofar as appellant was not prevented from receiving a fair trial.
 
 
 27
 We next consider the contentions of defendant-appellant Francisco Contreras-Cardenas.
 
 
 28
 Appellant first asserts that although he failed to request a duress instruction on appeal, we should award him a new trial because the trial court failed to so instruct the jury. Appellant now asserts that a "central theme" in his case was that "he was threatened and coerced by the informer to commit the acts in question." Elsewhere in his opening brief, he states that he "established that the informer had repeatedly threatened him with harm to his family (with particular reference to his daughters) if a drug deal was not accomplished. Second, Appellant established that he was justified to have, and did so have, a well-grounded fear that the informer's threat would be carried out."
 
 
 29
 A duress instruction is required when defendant shows: (1) immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm. United States v. Contento-Pachon, 723 F.2d 691, 693 (9th Cir.1984). The burden of proving the defense rests upon the defendant and must be made out by a preponderance of the evidence. United States v. Dominguez-Mestas, 929 F.2d 1379, 1383 (9th Cir.), cert. denied, 112 S.Ct. 419 (1991). Pursuant to a review of the facts presented at trial, we cannot conclude that the trial court committed plain error in failing to submit a duress instruction. Therefore, this claim lacks merit.
 
 
 30
 Next, appellant argues that the actions of the government leading up to the charges in the instant case constituted outrageous conduct "so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Ramirez, 710 F.2d 535, 539 (9th Cir.1983). While we have before noted that a defendant may raise a due process-based outrageous government conduct defense, see United States v. Bogart, 783 F.2d 1428, 1433 (9th Cir.1986), appellant failed to raise the issue below. Unless exceptional circumstances prevail, we will not address arguments that are raised for the first time on appeal. United States v. Winslow, 962 F.2d 845, 849 (9th Cir.1992). We will consider a newly raised matter only: (1) when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process; (2) when a change in law raises a new issue while an appeal is pending; and (3) when the issue is purely one of law. Jovanovich v. United States, 813 F.2d 1035, 1037 (9th Cir.1987).
 
 
 31
 In the case at bar appellant essentially argues that we should review the claimed error to prevent a miscarriage of justice or to preserve the integrity of the judicial process. A review of the facts reveals that such an outcome did not occur. The heroin transaction stemmed from events that began in April or May, 1991, when government informant Aguilar responded to a radio advertisement, placed by co-defendant Miguel Lopez-Manrriguez and two individuals named "Hector" and "Martin," regarding the cleaning of swimming pools. Aguilar arranged for the three men to clean a pool and at that time the subject of heroin was broached. After Aguilar provided Hector and Martin expense money, the two departed for Mexico but were not heard from again. After a period of some months, Aguilar again heard from Miguel who inquired whether Aguilar was still interested in obtaining some heroin.
 
 
 32
 On or about September 16, 1992, a phone call among Lopez-Manrriguez, appellant and government agents took place. During the call appellant allegedly agreed to bring samples of heroin from Los Angeles to Phoenix. Agents wired appellant $125.00 for expenses, pursuant to his request. On September 17, appellant met government agents in Phoenix and provided them with two samples of heroin, at which time there was a discussion as to quality and price of future deliveries. On September 18, appellant learned from the agents that they wanted to buy three kilograms of heroin. On September 22, appellant, his co-defendants and a government agent travelled from Los Angeles to Phoenix in two vehicles. Appellant drove his own van, in which the heroin was located. The others travelled behind the van in a Nissan pick-up truck. Subsequent to their arrival in Phoenix, and after additional discussions, appellant provided agent Casillas with a tan plastic bag containing one kilogram of heroin, apologizing for the fact that it was only one kilogram rather than the three that were allegedly promised. The arrests were then consummated.
 
 
 33
 Indisputably, the case at bar presents an example of persistent and creative law enforcement, including financial inducements and manipulation. Appellant attaches great import to the fact that the transaction had its obscure origins in the government agent's response to an innocent radio advertisement. However, it is well-settled that agents may use "artifice and stratagem to ferret out criminal activity." Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932). The negotiation and transaction took place over a mere six days, this fact itself indicating the appellant's predisposition to the crime. Appellant freely brought the heroin samples to Phoenix, a three-hundred mile trip from Los Angeles. Moreover, appellant drove in a vehicle separate from that of the agents on the same route on yet another occasion with the one kilogram of heroin. The outrageous conduct defense is available only when "the Government is so involved in the criminal endeavor that it shocks our sense of justice." United States v. So, 755 F.2d 1350, 1353 (9th Cir.1985). Moreover, we have recently held that the government need not have "reasoned grounds" to investigate a particular individual. United States v. Luttrell, 923 F.2d 764 (9th Cir.1991) (en banc ). In sum, we discern no basis to conclude that government misconduct occurred sufficient to constitute a due process violation, especially given that the claim was not raised below.
 
 
 34
 Next, Contreras-Cardenas, pursuant to Federal Rule of Appellate Procedure 28(i), adopts by reference co-appellant Zuniga-Rosales' arguments regarding the alleged discovery-related abuses and the matter involving the alleged provision of a false social security number, as discussed supra. For the identical reasons stated above, we reject these claims.
 
 
 35
 Finally, we address the merits of the government's cross-appeal, which concerns whether the court erred by sentencing Contreras-Cardenas on the basis of the roughly one kilogram of heroin delivered rather than the three kilograms allegedly under negotiation. The standard of review attending factual findings of a sentencing court is clear error while the legality of the sentence is reviewed de novo. United States v. Turner, 898 F.2d 705, 708 (9th Cir.), cert. denied, 495 U.S. 962 (1990).
 
 
 36
 The amended presentence report placed appellant at base offense level 34, applying Guideline § 2D1.1 regarding possession with intent to distribute at least three kilograms but less than ten kilograms of heroin. The report also recommended a two-level adjustment for acceptance of responsibility, lowering the recommended offense level to 32, and a criminal history category of III.
 
 
 37
 At sentencing, the court concluded that appellant "theoretically" had in his possession only one kilogram and therefore a base level of 30 was appropriate. Ultimately, the court sentenced appellant to 75 months imprisonment premised on a base level of 26 (incorporating two level reductions for acceptance of responsibility and minor participation, respectively) and a reduced criminal history level of II. At sentencing the court related as follows:
 
 
 38
 I thought about Mr. Contreras' circumstances during trial. It was at least called to my attention the financial circumstances of Mr. Contreras' family and the circumstances that his wife and children are now in.
 
 
 39
 I did not believe that Mr. Contreras was any major player in the drug transaction....
 
 
 40
 I am also concerned with respect to the probation report giving Mr. Contreras a guideline range of three kilograms of heroin, when in fact he was convicted of a possession count which said a kilogram or more and in fact all that was there and in his possession theoretically was a kilogram. And for that reason I do not believe it's appropriate for him to be given a base level consistent with three kilograms.
 
 
 41
 In looking at the response either by the probation office or Mr. Kirby's memorandum there is reference to a conspiracy and a conspiracy to possess something. Mr. Contreras was not convicted of the conspiracy count ...
 
 
 42
 And whatever the conspiracy quantity is here, I simply do not believe it is appropriate for Mr. Contreras to have 34 as a base offense level for the reasons I have just stated.
 
 
 43
 Based upon what I perceive to be Mr. Contreras' circumstances, poor without any financial welfare circumstances, with a van that really had trouble operating on occasion, Mr. Contreras is the one that hauled the heroin, and before that the samples, to Phoenix. The government provided the money for Mr. Contreras to do that through the informant.
 
 
 44
 The people were, as far as I could see or conclude, the ones who were involved in the drug transaction and stood to profit from it, were much smarter than Mr. Contreras. They drove in a separate vehicle with Mr. Contreras being told to drive out in front of them so that if he got caught they weren't there.
 
 
 45
 So, I have concluded under 3(b) 1.2 that in fact while Mr. Contreras was in front of the transactions, that they were behind him and that he was really a minor participant. And so I have given him a minimum participant and a two level reduction for that.
 
 
 46
 The government in its cross-appeal asserts the amount negotiated for on the day of the arrest was at least one kilogram. Therefore, at a minimum, appellant should be assessed a base level of 32, for having possessed at least one but less than three kilograms of heroin, or a base level of 34, because he negotiated for three kilograms.
 
 
 47
 As a threshold matter, we must determine whether the cross-appeal requires our review of a factual or legal determination by the sentencing court. Clearly, the passage cited above makes reference to both types of determinations. However, we are troubled by the court's expressed view that because appellant was found guilty only of possession of "a kilogram or more and in fact all that was there and in his possession theoretically was a kilogram," it was not "appropriate for [appellant] to be given a base offense level consistent with three kilograms."[3] Arguably, the balance of the court's statements at sentencing, regarding appellant's relatively small role, expressed the court's factual determination that appellant did not intend to produce and was not reasonably capable of producing the three kilograms allegedly negotiated. At the same time, the court's statements perhaps were provided in support of its view as to appellant's relatively minor role and the Guideline reduction attending that determination.
 
 
 48
 Given this uncertainty, we are compelled to conclude that a question as to the interpretation of the Guidelines is at issue, compelling de novo review. See United States v. Molina, 934 F.2d 1440, 1451 (9th Cir.1991) ("[b]ecause the parties do not dispute the facts concerning the amount negotiated and the amount actually possessed, this is a legal issue that we review de novo.").
 
 
 49
 In reviewing the district court's decision, we are guided by the Guidelines in effect on the date of sentencing. United States v. Mooneyham, 938 F.2d 139, 140 (9th Cir.), cert. denied, 112 S.Ct. 443 (1991); 18 U.S.C. § 3553(a)(4).[4] In interpreting the Guidelines, the courts are constrained to consult the Commentary that accompanies the Guidelines sections. See U.S.S.G. § 1B1.7 ("[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal."). In sum, in our review we must consult the Guidelines in effect as of August, 1992, the date of appellant's sentencing; in short, we must apply the November, 1991 Guidelines. United States v. Rodriguez-Razo, 962 F.2d 1418 (9th Cir.1992).
 
 
 50
 Because appellant was convicted of possession with intent to distribute, the sentencing court was required to interpret and apply Guideline § 2D1.1, an Application Note of which expressly provides that "[i]f the offense involved negotiation to traffic in a controlled substance, see Application Note 1 of the Commentary to § 2D1.4." U.S.S.G. § 2D1.1, Application Note 12. Application Note 1 provides, inter alia, as follows:
 
 
 51
 If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.
 
 
 52
 U.S.S.G. § 2D1.4(a), Application Note 1.[5] "An application note cannot be disregarded by the district court unless it is inconsistent with the related guideline." United States v. McAnich, 994 F.2d 1380, 1385 (9th Cir.1993), petition for cert. filed, No. 93-5486 (August 4, 1993). See also United States v. Fine, 975 F.2d 596, 599 n. 4 (9th Cir.1992) (application notes entitled to "considerable weight"); United States v. Anderson, 942 F.2d 606, 612 (9th Cir.1991) (en banc ).
 
 
 53
 The government asserts that "there were no specific findings that defendant either did not intend to complete the deal or was not reasonably capable of completing the deal. The evidence clearly establishes that defendant wanted to complete what he had started and, further, that he was in a position to deliver the final two kilograms of heroin." We are uncertain as to the district court's findings and conclusions in this regard. For this reason, we vacate the sentence accorded appellant Contreras-Cardenas and remand to the district court for findings not inconsistent with this Memorandum.
 
 
 54
 We affirm the convictions of each of the appellants and remand for resentencing of Contreras-Cardenas.
 
 
 55
 AFFIRMED IN PART AND REMANDED.
 
 
 
 *
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On September 17, 1992, the appeals as to both defendants were joined and the matters were argued jointly on appeal
 
 
 [2]
 Although he used the name "Aguilar" in the instant case, the individual's true name is Jose Manuel Briseno
 
 
 [3]
 The government's own laboratory tests, which are undisputed, are that the total weight of the heroin possessed by appellant was 996.215 grams, 3.915 grams on September 17, 1991, and 992.3 grams at the time of his arrest on September 22, 1991. However, count II, that concerning possession with intent to distribute, and which appellant was found guilty of, expressly makes reference to an "excess of 1 kilogram of heroin...."
 
 
 [4]
 We have recognized an exception to this rule in cases where amended versions of the Guidelines are deemed ex post facto. In such instances, we apply the Guidelines in effect at the time of the offense. See United States v. Castro, 972 F.2d 1107, 1112 (9th Cir.1992). Here, we discern no ex post facto issue and therefore apply the Guidelines in effect at the time of sentencing
 
 
 [5]
 In Molina, we also noted that § 2D1.4, which is captioned "Attempts and Conspiracies," is applicable to defendants convicted of possession with intent to distribute by virtue of Application Note 12 of Guideline § 2D1.1. Molina, 934 F.2d at 1451. See also United States v. Putney, 906 F.2d 477, 479 (9th Cir.1990)