**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

DAMIEN ALLEN NICKERSON,
          *Defendant-Appellant.*

No. 07-30382

D.C. No.
CR-06-00066-M-
DWM-02

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Chief District Judge, Presiding

Submitted January 21, 2009*
Seattle, Washington

Filed February 25, 2009

Before: Thomas M. Reavley,** Senior Circuit Judge,
Richard C. Tallman and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

**COUNSEL**

Jason T. Holden, Faure Holden Attorneys at Law, Great Falls, Montana, for the defendant-appellant.

Joshua Van de Westering, Assistant United States Attorney, Missoula, Montana, for the plaintiff-appellee.

**OPINION**

MILAN D. SMITH, JR., Circuit Judge:

Defendant-Appellant Damien Allen Nickerson was found guilty by a jury of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, and sentenced to 210 months in prison. Nickerson claims that his attorney's admitted violation of Montana Rules of Professional Conduct Rule 4.2 in the days before trial rendered her performance *per se* ineffective. We decline to adopt such a *per se* rule. Alternatively, Nickerson alleges that his attorney provided ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984), and that the district court abused its discretion by not granting a trial continuance or appointing new counsel. We disagree, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2005, Nickerson accompanied Frank Hazel to visit Hazel's probation officer. The probation officer, suspecting that Hazel was using methamphetamine, searched Hazel's vehicle, where Nickerson was sitting in the passenger seat. The probation officer asked Nickerson to step outside the vehicle and, after a brief search, found a zippered pouch under the passenger seat. Nickerson fled before the probation officer opened the pouch to find 177 grams of methamphetamine.

In November 2006, a grand jury indicted Nickerson for conspiracy to distribute methamphetamine, in violation of 21 U.S.C § 841(a)(1) and 21 U.S.C. § 846. Nickerson admitted he was a drug user who associated with Hazel, but denied being part of a conspiracy to distribute methamphetamine. The court set an April 16, 2007 as the trial date.

A week before the scheduled trial date, Nickerson's court-appointed counsel, Lisa Kaufman, became aware that co-

conspirator Hazel had information which might be exculpatory to her client. Kaufman contacted Hazel's attorney, Doreen Antenor, and requested an opportunity to interview Hazel. On at least three occasions, Antenor instructed Kaufman not to speak to Hazel outside of her presence. On Thursday, April 12th, Antenor again told Kaufman "she was to have no contact with [Hazel], period." On Friday, April 13th, Kaufman decided she wanted to subpoena or issue a writ regarding Hazel's testimony. She explained, however, that "she ha[d] to speak to him before she issue[d] a writ." She "felt she had no choice," that her "client ha[d] a Sixth Amendment right to forced confrontation," and that she had to follow her "constitutional and ethical requirements to represent [her] client zealously and ethically." She spoke to Hazel, got his agreement to testify, and then had the district court issue a subpoena for his testimony.

On the scheduled trial date, Antenor appeared before the court to discuss Kaufman's interview of her client and the subpoena. Antenor informed the court that Kaufman had interviewed Hazel without her consent, and that if Hazel were called to the stand, he would invoke his Fifth Amendment right to remain silent. The court then questioned Hazel about his intentions, and was informed by Hazel that he had discussed his Fifth Amendment rights with Antenor and that she was in a position to relay his intentions to the court. Antenor again confirmed to the court that if Hazel were called to testify, he would invoke his Fifth Amendment rights in response to all questions. Once the court was satisfied concerning Hazel's intention to invoke his Fifth Amendment rights, it promptly quashed the subpoena.

The district court next asked Nickerson whether he had thoroughly discussed recent developments in his case with his counsel, and whether he still wanted to go to trial that afternoon. Nickerson said that he did, and that he had no hesitation about doing so.

After the court recessed prior to the afternoon trial, Nickerson discussed the morning's developments in his case with his family. When he again appeared before the court, Nickerson informed Judge Molloy that he still had a problem with his counsel, and that he wanted the court to appoint a new one, because he wanted to have Hazel testify in his case. Judge Molloy explained that Hazel's lawyer had informed the court that Hazel would invoke his Fifth Amendment rights if called to testify. Judge Molloy then asked Nickerson if he had any other concerns about Kaufman's continuing to represent him. Nickerson responded that he did not, but again requested that the court appoint him a new attorney. Judge Molloy then recessed court to allow Nickerson and Kaufman time to discuss the reasons why Hazel was not testifying.

When court reconvened, Judge Molloy again asked Nickerson if he was ready to proceed to trial with Kaufman as his counsel. Nickerson confirmed several times that he was ready to proceed. Nickerson also stated that he did not believe he was being pressured unfairly into commencing his trial. The court then asked Nickerson yet again whether it was his choice to begin the trial, to which Nickerson responded affirmatively.

Once trial began, both the government and Kaufman called witnesses who testified regarding Nickerson's involvement in the conspiracy to distribute methamphetamine. At the conclusion of the trial, the jury found Nickerson guilty of conspiracy to distribute methamphetamine. The district court sentenced Nickerson to 210 months incarceration and 60 months supervised release for his violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. Although ineffective assistance of counsel claims are usually pursued in post-conviction proceedings, Nickerson can bring his claim

on direct appeal, as the record has been sufficiently developed on this issue. *United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000).

A claim that trial counsel had a conflict of interest with the defendant is a mixed question of law and fact and is reviewed de novo by the appellate court. *United States v. Moore*, 159 F.3d 1154, 1157 (9th Cir. 1998). Claims for ineffective assistance of counsel are also reviewed de novo. *United States v. Mack*, 164 F.3d 467, 471 (9th Cir. 1999). Finally, the district court's decision to grant or deny a motion for a continuance is reviewed for an abuse of discretion. *United States v. Nguyen*, 262 F.3d 998, 1002 (9th Cir. 2001).

## DISCUSSION

### I.  *Per Se* **Ineffective Assistance of Counsel Claim.**

Nickerson argues that he was so compromised by his attorney's admitted pre-trial violation of Montana Rules of Professional Conduct Rule 4.2 that her conduct rendered her assistance as counsel ineffective *per se*. Montana Rules of Professional Conduct (MRPC) Rule 4.2 reads:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

It is clear that Kaufman violated MRPC Rule 4.2.

**[1]** There is no Ninth Circuit rule that the violation of a rule of ethics or professional conduct by counsel before trial constitutes ineffective assistance of counsel *per se*. Nickerson requests that we create such a rule. Such a broad rule has been explicitly rejected by other circuits. *See Beets v. Scott*, 65 F.3d

1258, 1271 (5th Cir. 1995) (en banc); *see also United States v. Rimell*, 21 F.3d 281, 286 (8th Cir. 1994); *Bellamy v. Cogdell*, 974 F.2d 302, 309 (2d Cir. 1992)*; Brewer v. Aiken*, 935 F.2d 850, 859-60 (7th Cir. 1991); *McDougall v. Dixon*, 921 F.2d 518, 534 (4th Cir. 1990)*.*

**[2]** Though we have not yet explicitly rejected such a rule, we have held that in some circumstances violations of rules of professional conduct do not constitute ineffective assistance of counsel. *See LaGrand v. Stewart*, 133 F.3d 1253, 1276 (9th Cir. 1998), *United States v. Bosch*, 914 F.2d 1239, 1245 (9th Cir. 1990). For example, in *Bosch*, the district court discovered during trial that the defendant's attorney had been disbarred from practice and had not been properly readmitted. 914 F.2d at 1244. The court ordered the attorney to confer with his client, and then asked whether the defendant wanted to continue being represented by his attorney, and whether he wanted to continue with the trial. *Id.* The defendant replied that he wanted to continue with the trial, represented by the same counsel. The appellate court determined that because the trial court found that the defendant was competent, had been apprised of his attorney's disbarment, and freely elected to proceed, his attorney's ethical violation had no effect on the defendant's meeting his burden under *Strickland*. *Id.* at 1245. Much the same occurred in this case. Nickerson was competent, aware of his attorney's ethical violation, and freely elected to proceed with trial.

**[3]** We are mindful of the Supreme Court's admonition that "[p]er se rules should not be applied . . . in situations where the generalization is incorrect as an empirical matter; the justification for a conclusive presumption disappears when application of the presumption will not reach the correct result most of the time." *Coleman v. Thompson*, 501 U.S. 722, 737 (1991). While we readily acknowledge that a violation of professional or ethical rules could lead to a deficient attorney performance that prejudices the defendant, as contemplated by *Strickland, infra*, *Bosch* is evidence that such is not always the

case. 914 F.2d at 1245. With that uncertainty in mind, we hold that an attorney's violation of a rule of ethics or professional conduct before trial does not constitute *per se* ineffective assistance of counsel.

**[4]** Even though Nickerson's argument that his counsel's pre-trial ethical violation constituted ineffective assistance of counsel *per se* fails, his argument is perhaps better construed as a claim that Kaufman's ethical violation created an actual conflict with Nickerson's interests. Under *United States v. Moore,* Nickerson must show that an actual conflict of interest adversely affected his lawyer's performance. 159 F.3d at 1157; *see also United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005). Further, Nickerson must "prove actual conflict, not just a possibility of conflict, 'through a factual showing on the record.' " *Moore,* 159 F.3d at 1157 (citing *Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1991)); *see also United States v. Shwayder,* 312 F.3d 1109, 1117-20 (9th Cir. 2002) (holding that the defendant must show that "counsel was influenced in his basic strategic decisions" by the conflict of interest); *United States v. Baker*, 256 F.3d 855, 860 (9th Cir. 2001) (noting that an "attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action") (citation and internal quotation marks omitted).

**[5]** Nickerson claims that Kaufman's actual conflict of interest — her ethical violation — inhibited her performance because her performance was "guarded at best, and incomprehensible at worst." However, Nickerson's claim fails because he does not point to any evidence in the record that demonstrates why Kaufman's violation created any actual interests divergent from his own, and which impaired her ability to effectively represent him. While Nickerson has certainly shown that his attorney's behavior was unethical and irresponsible, he has not proven that his violation created an

actual conflict which impaired her ability to effectively represent him.

## II.  **Traditional Ineffective Assistance of Counsel Claim.**

**[6]** Nickerson also brings a traditional ineffective assistance of counsel claim. In order for Nickerson to show ineffective assistance of counsel, he must demonstrate both deficient performance by counsel and prejudice, under the standard established in *Strickland.* 466 U.S. at 687-88. To establish prejudice, Nickerson must show that the outcome of the trial would have been different but for Kaufman's errors. *See Strickland,* 466 U.S. at 694.

Nickerson claims ineffective assistance of counsel because the subpoena for Hazel's testimony was quashed in part because of Kaufman's violation of MRPC Rule 4.2. Nickerson argues that "but for his counsel's violation of Rule 4.2, Mr. Hazel would have testified," and that "[b]ecause of her unethical interview, Mr. Hazel invoked his Fifth Amendment rights and the District Court quashed Mr. Hazel's subpoena."

On April 17, 2007, Hazel's attorney, Antenor, informed the court that Kaufman had interviewed Hazel without her consent, and that if Hazel were called to testify, Hazel would invoke his Fifth Amendment right to remain silent. The court then directly questioned Hazel regarding his intentions, and Hazel informed the court that he had discussed his Fifth Amendment rights with Antenor, and that she was authorized to advise the court of his intentions. Antenor then reconfirmed to the court that Hazel would, if called, invoke his Fifth Amendment right not to testify in response to all questions. Only at this point did Judge Molloy quash the subpoena.

**[7]** Although there is no way for us to know Hazel's motivation for invoking his Fifth Amendment rights with certainty, it appears from the record that Hazel made that choice

under the continuing advice of his counsel, and that Hazel would not have testified regardless of Kaufman's inappropriate interview. As Judge Molloy stated, "Ms. Antenor is the one advising [Hazel], and she had represented [Hazel] is invoking, will invoke, intends to invoke, *has always intended* to invoke his right against self-incrimination." (Emphasis added).

**[8]** In determining whether a defendant was prejudiced by counsel's inadequate representation, we examine the evidence that could have been presented to the jury had counsel performed competently and compare that to the evidence that the jury actually heard. *See Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir. 1995). Here, the jury was never aware of Hazel's potential testimony. While the issue was highlighted by Kaufman's inappropriate contact with Hazel, the record contains no evidence that Hazel intended to testify before Kaufman contacted him, nor would his attorney have advised him to do so. Thus, the jury would not have heard from Hazel, regardless of whether Kaufman's ethical violation had occurred or not. Because Nickerson does not provide evidence that Kaufman's violation of MRPC Rule 4.2 prevented the jury from hearing Hazel's testimony, Nickerson does not establish prejudice under *Strickland*, and his ineffective assistance of counsel claim fails.

III.  **Request for Trial Continuance and Appointment of New Counsel.**

**[9]** Nickerson also argues that his trial should have been continued and that the court should have appointed new counsel for him once Kaufman's ethical violation was discovered. The request for new counsel can best "be analyzed as the denial of a continuance or the denial of a motion to substitute counsel." *Nguyen*, 262 F.3d at 1001. Generally, district judges have broad latitude to deny a motion for substitution of counsel on the eve of trial when the request would require a continuance. *United States v. Castro*, 972 F.2d 1107, 1109 (9th

Cir. 1992) (*overruled on other grounds by United States v. Recio*, 537 U.S. 270 (2003)). "However, this discretion must be balanced against the defendant's Sixth Amendment right to counsel." *Nguyen,* 262 F.3d at 1003.

Nickerson requested a new attorney after Kaufman's violation was made known to the court and Hazel's subpoena was quashed. Although Nickerson eventually changed his mind and proceeded to trial after repeatedly affirming his choice to have Kaufman continue to represent him, Nickerson now argues that "[h]e did not knowingly waive his right to a newly appointed attorney because he was not provided independent advice from an attorney who was not compromised before the District Court."

Nickerson's concern with Kaufman's representation stemmed from his desire to have Hazel testify on his behalf. After Judge Molloy explained to Nickerson that Hazel would not have testified even if Kaufman had not spoken to him, Nickerson maintained his request for a new attorney. The district court judge then allowed a short recess so Nickerson could speak with his attorney. When they returned on the record, Kaufman informed the district court that "Damien [Nickerson] was getting very mixed signals and now, [after] the final conversation we've had, the father understands that the lawyer he's been speaking to has only received piecemeal information and that it would be in Damien's best interest to proceed. Damien feels comfortable with that decision. I believe we are ready to proceed." Judge Molloy then asked Nickerson in at least seven different ways whether he wanted to go forward with Kaufman as his attorney, and Nickerson answered each inquiry affirmatively.

**[10]** The record demonstrates that Judge Molloy adequately explained the situation and allowed Nickerson to make the final decision whether to proceed. *Nguyen*, 262 F.3d at 1002 ("[T]his Court affirms the denial of a continuance only if the district court displays adequate care and concern for the

defendant's rights."). Judge Molloy offered a continuance twice, and made it clear to Nickerson that going forward with the trial was his choice and that no one was pressuring him to proceed to trial. Unlike in *Nguyen* and *Castro*, where the defendants went into trial requesting a different attorney, Nickerson went into trial affirming his decision to continue to be represented by Kaufman. Nickerson has not produced any evidence that his decision was not "knowing," as he alleges. The district court did not abuse its discretion when it declined to grant a continuance or appoint new counsel.

## CONCLUSION

We hold that an attorney's violation of a rule of ethics or professional conduct before trial does not constitute *per se* ineffective assistance of counsel. Nor has Nickerson shown prejudice under a traditional ineffective assistance of counsel analysis. Finally, Judge Molloy displayed continuous concern for Nickerson's rights, and did not abuse his discretion by not granting a continuance or appointing new counsel for Nickerson.

**AFFIRMED.**