UNITED STATES, Plaintiff–Appellee,

v.

Lorenz Vilim KARLIC, Defendant–Appellant.

No. 91–50091.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 4, 1993.

Decided June 23, 1993.

Gail Ivens, Pasadena, CA, for defendant-appellant.

Marc S. Harris, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: CANBY, BOOCHEVER, and WILLIAM A. NORRIS, Circuit Judges.

BOOCHEVER, Circuit Judge:

This case involves whether a defendant may be held to have knowingly, as opposed to recklessly, created a substantial risk of death or serious bodily injury for purposes of a sentencing enhancement under section 2K1.4 of the Sentencing Guidelines.

I

In the predawn hours of three separate Mondays in May and June 1990, appellant Lorenz Vilim Karlic and his partner, Rodney Burl Smith, used homemade explosives to blast open the safes below night depository boxes in three banks in the area of Palm Springs, California. On each occasion Karlic stood guard at the front of the bank while Smith broke open the night depository box and dropped a lit explosive down a chute into the safe. After the explosion Karlic and Smith collected the money that was scattered on the ground. All three banks suffered extensive damage, and one was completely demolished.

Karlic pled guilty to a nine-count indictment charging him with maliciously damaging and destroying a building and personal property used in an activity affecting interstate commerce in violation of 18 U.S.C. § 844(i), entering a bank whose deposits were insured by the Federal Deposit Insurance Corporation with intent to commit larceny in violation of 18 U.S.C. § 2113(a), and using an explosive to commit a felony in violation of 18 U.S.C. § 844(h). In exchange for Karlic's cooperation with the government in its investigation and prosecution, the government agreed to recommend that Karlic be sentenced to a term of 4 years.

At sentencing, the district court accepted the recommendation of the presentence report that Karlic's base offense level be increased by 18 for "knowingly creat[ing] a substantial risk of death or serious bodily injury." U.S.S.G. § 2K1.4(b)(1) (Nov. 1989). Karlic's resulting offense level of 25 for violations of § 844(i) and § 2113(a) carried a sentencing range of 100–125 months. In addition, Karlic was subject to mandatory minimum sentences of 5 years each on the three § 844(h) counts, to run consecutively to each other and to the sentence imposed on the other counts. Thus, in the absence of a downward departure, the minimum sentence required would have been 280 months, or 23⅓ years. The court rejected the government's recommendation of a 4–year term, but departed downward on the basis of Karlic's substantial assistance with the case and imposed a total sentence of 132 months, or 11 years.

Karlic appeals his sentence on two grounds. First, he argues that the district court erred in increasing his base offense level by 18 because the facts support at most a finding that he recklessly created a risk of death or bodily injury, which would result in an increase of only 14. Second, he argues that the imposition of consecutive sentences under 18 U.S.C. §§ 844(h) and 844(i) violated the Double Jeopardy Clause of the Fifth Amendment.

## II

### A

Before we reach the merits of Karlic's first argument, we must address a potential bar to its consideration. Karlic contends that his total offense level should have been no more than 21 because his creation of a risk of death or serious bodily injury was at most reckless rather than knowing. A total offense level of 21 yields a sentencing range of 70–87 months. Adding the three mandatory 5–year sentences, Karlic's minimum sentence in the absence of a departure would have been 250 months, or nearly 21 years, had the court applied the Guidelines as Karlic argues it should have, rather than the 280 months used by the district court as a starting point for the downward departure. Karlic contends that the court would have given him a lesser sentence had it used the lower starting point of 250 months.

Relying on *United States v. Fuentes*, 925 F.2d 1191, 1192–93 (9th Cir.1991) (per curiam), the government contends that we need not reach the merits of Karlic's argument because Karlic received a lesser sentence after the court's discretionary departure than would have been authorized under his proposed application of the Guidelines. We reject the government's argument because we find *Fuentes* distinguishable. In that case, the district court departed downward from the applicable sentencing range and sentenced Fuentes to the statutory minimum of 120 months. We did not address Fuentes' argument that the district court erred in denying him a two-level reduction for acceptance of responsibility and in calculating his criminal history category because the resulting pre-departure sentencing range, assuming the argument, would have been greater than the 120–month mandatory minimum sentence Fuentes actually received. Although a district court may depart below a statutory minimum on the government's motion based on a defendant's substantial assistance, 18 U.S.C. § 3553(e) (1988), there is no indication that the government in *Fuentes* had made such a motion. *See United States v. Arnold*, 981 F.2d 1121, 1122 (9th Cir.1992) (district court may not depart downward from mandatory minimum sentence absent motion by government), *cert. denied*, ─── U.S. ───, 113 S.Ct. 1957, 123 L.Ed.2d 661 (1993). Thus in *Fuentes* the district court could not have departed any further even had it started with the lower guideline range. Here, the government's request for a 4–year sentence was a request for departure below the statutory minimum. We cannot say with assurance that Karlic's final sentence would have been the same had the district court begun with a total offense level of 21 rather than 25.

Moreover, the Supreme Court has recently given us clear instructions on the procedure to be followed when a sentence results from an incorrect application of the Guidelines. In *Williams v. United States*,

—— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), the Court held that when a court of appeals determines that a district court misapplied the Guidelines, it should remand under 18 U.S.C. § 3742(f)(1) "unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed." *Id.,* at ——, 112 S.Ct. at 1120–21. *Williams* does not affect the holding of *Fuentes* because in that case the error was harmless; it does, however, preclude the broad reading of *Fuentes* that the government proposes. Here, only the district court can resolve whether the sentence resulting from its downward departure would have differed had the court accepted Karlic's contention that his conduct was reckless. We therefore cannot state that the alleged error was harmless. *Fuentes* thus creates no bar to our consideration of Karlic's argument, and we are required to remand if we determine that the district court misapplied the Guidelines in finding that Karlic knowingly created a risk of death or serious injury.

### B

■ The version of § 2K1.4 (Arson: Property Damage By Use of Explosives) in effect at the time of Karlic's offense [1] provided for an increase of 18 in the base offense level "[i]f the defendant knowingly created a substantial risk of death or serious bodily injury," § 2K1.4(b)(1), and an increase of 14 "[i]f the defendant recklessly endangered the safety of another," § 2K1.4(b)(2). The district court increased Karlic's base offense level by 18, stating:

> The probation department states that there seems to be no doubt whatsoever that the defendant was fully cognizant of the destructive potential of the bomb as testing had earlier been done to determine its explosive capacity. That the defendant

and his alleged co-participant knowingly created a substantial risk of death or serious injury becomes clear when considering the fact that the bomb was placed in a night depository. A facility which expressly exists for after hour banking transactions.

> Because of the purpose of the twenty-four hour depository, there was a much higher probability that unsuspecting persons would be frequenting a location during other than normal working hours, which is exactly when the bombs were set to explode. Alternatively stated, just because the bombs were set to detonate at an earlier hour, did not guarantee by any means that a bank customer would not arrive to make a deposit. And it seems logical to assume that the defendant knew this.

> Furthermore, the reported burning time of the fuses, which was not more than thirty seconds, would have most likely totally precluded the defendant and his alleged co-participant from warning a potential night depository customer unexpectedly arriving to make a deposit, that an explosion was eminent [sic]. With the factors that the probation department has laid out, an eighteen level increase is appropriate and this Court agrees.

Karlic argues that the district court erred in applying an 18–level increase because the facts support at most a finding that his creation of a risk was reckless. We disagree.

■ Whether a defendant knowingly creates a substantial risk of death or serious bodily injury is a factual question. We therefore review a district court's findings in support of a sentencing enhancement pursuant to § 2K1.4 for clear error. *United States v. Bos,* 917 F.2d 1178, 1180 (9th Cir. 1990); *accord United States v. Golden,* 954 F.2d 1413, 1416 (7th Cir.1992); *United States*

---

1. Section 2K1.4 was replaced in its entirety by Amendment No. 330 on November 1, 1990. It is unclear why the district court applied the version in effect at the time of the offense rather than the amended version in effect at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4) (1988) (district courts are to apply guidelines in effect on date defendant is sentenced); *United States v. Warren,* 980 F.2d 1300, 1304 (9th Cir.1992). Because the

base offense levels resulting from finding that the defendant knowingly or recklessly created a risk are the same under both versions, and because neither party has invoked the amended text, we need not decide whether the district court used the correct guideline. *See United States v. Foutris,* 966 F.2d 1158, 1163–64 (7th Cir.1992) (Easterbrook, J., concurring); *United States v. Bader,* 956 F.2d 708, 709 (7th Cir.1992).

*v. Wilson,* 927 F.2d 1188, 1190 (11th Cir. 1991); *United States v. Medeiros,* 897 F.2d 13, 17 (1st Cir.1990). The interpretation of a Guidelines term, however, is a question of law which we review de novo. *United States v. Blaize,* 959 F.2d 850, 851 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992); *United States v. Nazifpour,* 944 F.2d 472, 473 (9th Cir.1991). The government bears the burden in the district court of proving sentencing factors by a preponderance of the evidence. *United States v. Restrepo,* 946 F.2d 654, 661 (9th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992).

■ Analysis of whether a sentencing enhancement is warranted under § 2K1.4 entails two distinct inquiries. First, the court must ask whether the defendant's actions created a substantial risk of death or injury. This is an objective question that focuses on the circumstances surrounding the offense. A finding that there was a substantial risk of death or injury is a necessary predicate to the second, subjective, inquiry, which asks whether the defendant acted knowingly or recklessly in creating that risk.

We conclude that the district court did not clearly err in finding that the bombings created a substantial risk of death or serious injury. Although the evidence indicated that Karlic and Smith targeted banks where the night depository was located away from any highway or busy streets, and although the times of the three explosions—4:42 a.m., 2:42 a.m., and 3:15 a.m. on Monday mornings—were clearly chosen for the unlikelihood that anyone would be conducting banking transactions, the possibility of a customer or vehicle approaching the bank immediately before the explosion was sufficient to create a substantial risk of death or serious injury. Moreover, at least one of the banks was adjacent to an apartment complex, creating a substantial risk of death or injury to that building's occupants.

■ We must next decide whether Karlic knowingly or recklessly created what we have found to be a substantial risk. Because the Guidelines do not define "knowingly" or

"recklessly," we must derive the meaning of the terms from other sources. *See United States v. Bader,* 956 F.2d 708, 710 (7th Cir. 1992) (noting that "[n]othing in the guidelines implies that the Commission used 'knowingly' in a special sense"). The Model Penal Code defines "knowingly" as follows:

> A person acts knowingly with respect to a material element of an offense when:
>
> . . . .
>
> (ii) if the element involves a result of his conduct, he is aware that it is *practically certain* that his conduct will cause such a result.

Model Penal Code § 2.02(2)(b) (1985) (emphasis added). In contrast, "[a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." *Id.* § 2.02(2)(c). The Supreme Court has relied on the Model Penal Code definitions in construing the meaning of "knowingly" in various statutes. *See, e.g., Turner v. United States,* 396 U.S. 398, 416 & n. 29, 90 S.Ct. 642, 652 & n. 29, 24 L.Ed.2d 610 (1970); *Leary v. United States,* 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 1553 n. 93, 23 L.Ed.2d 57 (1969).

■ Applying these definitions, we conclude that a defendant can be found to have "knowingly" created a substantial risk of death or serious bodily injury under § 2K1.4 only if the defendant was aware that a substantial risk of death or serious injury was "practically certain" to result from the criminal act. Put another way, the defendant knowingly created the requisite risk if (1) it was practically certain that his actions would cause a substantial risk of death or serious injury, and (2) the defendant was aware of that fact. A defendant is aware that his actions are practically certain to create a substantial risk if he is aware (1) that the factors that present a substantial risk of death or serious injury are practically certain to exist, and (2) that in view of those factors, it is practically certain that his actions will create a substantial risk.[2] *See*

---

**2.** Deliberate ignorance as to the circumstances

creating the substantial risk is equally culpable

*Bader,* 956 F.2d at 710–11 (defendant knowingly created risk by pipe-bombing house that he knew to be occupied); *Wilson,* 927 F.2d at 1190 (defendant knowingly created risk by setting fire with multiple points of origin 35 feet from inhabited apartment complex); *Bos,* 917 F.2d at 1182 (defendant knowingly created risk by attempting to blow up store near public streets and other businesses with pedestrian access). Where, on the other hand, it was not a practical certainty that the defendant's conduct would cause a substantial risk of death or serious injury, or where it was a practical certainty but the defendant was not aware of that fact, the most that can be said of the defendant's conduct is that it was reckless.

In light of this standard, we hold that the district court did not clearly err in finding that Karlic knowingly created a substantial risk of death or serious bodily injury. Reviewing the factors that we have concluded objectively created a substantial risk, it appears that Karlic was aware that it was practically certain that those factors existed and that his actions would create a substantial risk. Karlic was aware of the dangerousness of the explosives he used, having tested them on several occasions and having witnessed their destructive potential in the initial bombings. He was also aware of the potential for bank customers to arrive. After Karlic and Smith drilled the lock on the depository of the third bank, Karlic left the bank briefly to move his truck to another location. When he returned for the bombing, Smith told Karlic that he had observed someone make a deposit. Thus Karlic was aware that people did in fact use night depositories even at this early Monday morning

hour. Finally, Karlic was aware that neighboring residents were practically certain to be present, having parked and hidden his tools in the apartment complex behind one of the banks.

The knowing use of explosives under the existing conditions constituted a substantial risk. Karlic was aware that those conditions existed and that it was practically certain that the bombings would result in a substantial risk. We conclude, therefore, that he knowingly created a substantial risk of death or serious bodily injury under § 2K1.4.

### III

 Karlic also argues that the consecutive sentences imposed by the district court pursuant to 18 U.S.C. §§ 844(h) [3] and 844(i) [4] violate the Fifth Amendment guarantee against double jeopardy. Karlic failed to raise this issue in the district court, but a challenge to multiplicity of sentences may be raised for the first time on appeal. *See United States v. Mastrangelo,* 733 F.2d 793, 800 (11th Cir.1984).

 Congress is free to prescribe multiple punishments for the same conduct. *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981). To determine whether Congress intended that two statutory offenses be punished cumulatively, we apply the test set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there

---

with positive knowledge. *See United States v. Jewell,* 532 F.2d 697, 700 (9th Cir.1976) (en banc).

**3.** 18 U.S.C. § 844(h) provides in relevant part:

 Whoever—

 (1) uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States, . . .

 . . . . .

 . . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for five years. . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of

any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried.

**4.** 18 U.S.C. § 844(i) provides in relevant part:

 Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years. . . .

are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

See *Albernaz*, 450 U.S. at 337, 101 S.Ct. at 1141; *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980). " 'If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.' " *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) (quoting *Ianelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975)).

The two statutes under which Karlic was sentenced satisfy the *Blockburger* test. Section 844(h) requires proof of the commission of a separate "felony which may be prosecuted in a court of the United States" (in this case, entering a bank with intent to commit larceny), an element not required by § 844(i). Section 844(i) requires proof of damaging or attempting to damage "property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce," an element not required by § 844(h). Finally, nothing in the legislative history of § 844 discloses an intent contrary to the *Blockburger* presumption. *See Albernaz*, 450 U.S. at 340, 101 S.Ct. at 1143; *United States v. Fiore*, 821 F.2d 127, 131–32 (2nd Cir.1987). Thus Karlic's consecutive sentences under these sections did not constitute double jeopardy.

Our conclusion accords with *Fiore*, in which the defendant burned down his business in an attempt to commit mail fraud against his insurance company. Applying the *Blockburger* test, the Second Circuit held that the indictment charging violations of §§ 844(h) and (i) was not multiplicitous because Congress intended to authorize multiple punishments. *Fiore*, 821 F.2d at 130–31. Karlic argues, however, that *United States v. Chaney*, 559 F.2d 1094, 1096 (7th Cir.1977), suggests a different result. In that case, the court held that an indictment charging violations of §§ 844(h) and (i) was multiplicitous under the *Blockburger* test. We find *Chaney*

to be factually inapposite. Chaney was charged *only* with violations of §§ 844(h) and (i); the predicate "felony" for the § 844(h) offense was the § 844(i) offense. Under those circumstances, § 844(h) did not require proof of any fact that § 844(i) did not. In this case, by contrast, Karlic was charged with a felony violation of 18 U.S.C. § 2113(a), entering a bank with intent to commit larceny. Proof of that felony was required for the § 844(h) offense but not for the § 844(i) offense. The *Blockburger* test is therefore satisfied.

AFFIRMED.