**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Florence Martha BEARDSLEE, Defendant–Appellant.**

**United States of America, Plaintiff–Appellant–Cross–Appellee,**

v.

**Florence Martha Beardslee, Defendant–Appellee–Cross–Appellant.**

Nos. 97–10286, 97–10314.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 1999.

Filed Nov. 1, 1999.

Dennis P. Riordan, Riordan & Rosenthal, San Francisco, California, for defendant-appellant, defendant-appellee-cross-appellant Florence Martha Beardslee.

Martha Boersch, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee, plaintiff-appellant-cross-appellee.

Before: CHOY, CANBY, and SILVERMAN, Circuit Judges.

CHOY, Circuit Judge:

Florence Martha Beardslee ("Beardslee") appeals her conviction, following a jury trial, for conspiracy in violation of 18 U.S.C. § 371, arson in violation of 18 U.S.C. § 844(i), use of fire to commit a felony in violation of 18 U.S.C. § 844(h), and mail fraud in violation of 18 U.S.C. § 1341. Beardslee contends that the district court erred by (1) barring cross-examination by Beardslee of government witness Ben Pierce; (2) limiting the scope of cross-examination by Beardslee of government witness Barry Venable; (3) ruling that Count Three of the superseding indictment, use of fire to commit mail fraud in violation of 18 U.S.C. § 844(h), was not barred by the statute of limitation; and (4) denying Beardslee's motion to suppress evidence on the ground that the Government had an independent source for the evidence. We reject each claim and affirm the decisions of the district court.

The Government cross-appeals Beardslee's sentence. The Government contends that the district court erred by (1) failing to impose Beardslee's sentence under 18 U.S.C. § 844(h) consecutively to all other sentences; (2) applying the 1989 Sentencing Guidelines instead of the 1992 Sentencing Guidelines to Beardslee's conspiracy conviction; (3) declining to make an upward adjustment to Beardslee's arson conviction for knowingly or recklessly creating a risk of harm; and (4) declining to enhance Beardslee's sentence for obstruction of justice. We affirm the district court on all but the first claim of the cross-appeal; on that claim alone we vacate and remand Beardslee's sentence for imposition of a sentence under 18 U.S.C. § 844(h) that runs consecutively to all other sentences.

*Facts*

On December 10, 1989, a fire burned a Fort Bragg, California, warehouse that was owned by Beardslee and used in her business, Natural Beverage Distributors ("NBD").

Although investigators tentatively concluded that the cause of the fire was electrical, Beardslee called the Bureau of Alcohol, Tobacco & Firearms ("ATF") to report the fire as a suspected arson. Beardslee told an insurance investigator that she suspected that various individuals connected to Anheuser–Busch, Inc. ("Anheuser–Busch") might have a motive to set the fire. On August 28, 1989, Anheuser–Busch had terminated an agreement under which NBD was authorized as a wholesale distributor of Anheuser–Busch products. At the time of the fire, Beardslee was engaged in litigation with Anheuser–Busch over the fair market value of her assets, which consisted primarily of the warehouse, and the value of two times her pre-tax net earnings, to which she was entitled under her distributorship agreement with Anheuser–Busch.

Further investigation revealed the presence of gasoline in the area of the warehouse office, and investigators concluded that the fire was initiated by gasoline that had been poured into the warehouse struc-

ture through a drain pipe, and ignited. However, investigation of the fire became inactive after late 1990, and in early 1992 both the Fort Bragg police and the ATF closed their files without determining who was responsible for the fire. In the intervening period, in 1990 and 1991, Beardslee made claims to and received payments from the Fireman's Fund Insurance Company ("Fireman's Fund"), California Insurance Group, and Financial Indemnity Company ("Financial Indemnity") for losses sustained as a result of the fire.

At the time of the fire, Beardslee held a $350,000 Fireman's Fund insurance policy on the warehouse, which policy covered the cost of replacement of lost or damaged property due to fire. In August of 1989– four months before the fire occurred- Beardslee had canceled all coverage on the warehouse except for the fire coverage; at that time, she had expressed concerns to her insurance broker that someone associated with Anheuser–Busch "might burn the building down." Fireman's Fund ultimately paid Beardslee a total of $85,150.43 for damage to the warehouse, and a total of $20,250 for lost rent. Beardslee also collected approximately $10,000 in insurance proceeds from Financial Indemnity for claims relating to damage to business vehicles owned by Beardslee and housed at her warehouse.

In early 1993, the ATF received a tip that Barry Venable ("Venable") had been involved in the fire. In March of 1993, Venable was arrested in Colorado on an unrelated matter. During an interview with the authorities, Venable confessed that he had been hired by Beardslee to burn the warehouse, and that he and Paul Glover ("Glover") had committed the arson. Venable also agreed to make a number of taped phone calls to Beardslee.

In the first of these calls, on March 30, 1993, Beardslee acknowledged that she had doubled the amount she agreed to pay Venable, and that she had already given him a car as partial payment. In another telephone conversation that occurred on April 1, 1993, Venable told Beardslee for the first time that he had recruited Glover to assist in setting the fire; Beardslee stated that she would not have arranged for the arson if she had known that anyone other than Venable would be involved.

## Proceedings

On April 18, 1994, a federal grand jury returned an indictment charging Beardslee, Venable, and Glover with conspiracy in violation of 18 U.S.C. § 371 (Count One) and arson of a structure used in interstate commerce in violation of 18 U.S.C. § 844(i) (Count Two). Beardslee was also charged with mail fraud in violation of 18 U.S.C. § 1341, based on her submission of insurance claims concerning the burning of the building (Counts Three through Twenty– One).

After both Venable and Glover agreed to cooperate with the Government and pled guilty, a federal grand jury returned a superseding indictment against Beardslee on September 13, 1995. The superseding indictment added one charge, embodied in a new Count Three, alleging that Beardslee violated 18 U.S.C. § 844(h) by using fire to commit a federal felony offense-mail fraud, as charged in the remaining counts. The superseding indictment also changed Venable and Glover from defendants to unindicted co-conspirators in Count One and aiders and abettors in Count Two. The mail fraud counts (formerly Counts Three through Twenty–One) were renumbered to Counts Four through Twenty–Two, but in all other respects the superseding indictment remained the same as the original indictment.

Beardslee's first jury trial, which commenced on September 22, 1995, ended with a mistrial. The retrial began approximately one year later, and on October 30, 1996, the jury returned a verdict finding Beardslee guilty on all counts of the superseding indictment.

On June 4, 1997, Beardslee was sentenced to be imprisoned for a total of 87

months, comprised of 27–month terms for Counts One (conspiracy), Two (arson), and Four through Twenty–Two (mail fraud), all to run concurrently to each other, and a 60–month term for Count Three (use of fire to commit mail fraud), to run concurrently to the terms for Counts One and Two, but consecutively to the terms for Counts Four through Twenty–Two.

## Discussion and Analysis

### I. Cross–Examination of Pierce

In the summer or fall of 1989, Beardslee asked Ben Pierce ("Pierce") whether he could find someone to burn her warehouse. Pierce approached an acquaintance with money provided by Beardslee, but the acquaintance declined the offer. At Beardslee's first trial, Pierce was asked whether he was on probation at the time of his testimony. Pierce answered "yes" before the Government objected and before the district court sustained the objection. Prior to the second trial, the Government moved *in limine* seeking exclusion of any question regarding Pierce's probationary status or his willingness to take a polygraph test. The district court granted the Government's motion prior to Pierce's taking the stand in the second trial.

■ We review for an abuse of discretion the district court's decision to limit the scope of cross-examination. *See United States v. James*, 139 F.3d 709, 713 (9th Cir.1998). Whether limitations on cross-examination are so severe as to amount to a violation of the confrontation clause is reviewed de novo. *See id.*

■ The district court did not abuse its discretion in determining that Pierce's probationary status was not an appropriate area of inquiry. Moreover, the limitation of Pierce's cross-examination did not violate the confrontation clause. In *James*, this court articulated a three-part inquiry to determine whether a criminal defendant's Sixth Amendment right to confront a witness against her has been violated by the exclusion of evidence.[1] *See id.* at 713 (applying the two-part inquiry from *Wood v. Alaska*, 957 F.2d 1544, 1549–50 (9th Cir.1992), as well as reading an implicit third inquiry into *Wood*'s holding). *James* held that the reviewing court must inquire whether: (1) the excluded evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness. *See id.*

The relevance of Pierce's probationary status is marginal, at best. The evidence against Beardslee encompassed not merely Pierce's testimony, but the testimony of Venable, Glover, and Guy Simpson—all of whom, unlike Pierce, were involved to some degree in the actual arson—as well as Beardslee's taped telephone conversations with Venable, and other pieces of circumstantial evidence, such as records of Beardslee's interaction with the authorities and Anheuser–Busch. Moreover, Pierce was adequately examined on other issues that touched on his credibility and possible bias against Beardslee, such as his failure to fully implicate Beardslee in his first ATF interview.

Accordingly, the district court did not err in barring cross-examination of Pierce regarding his probationary status.

1. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), does not support Beardslee's argument that exclusion of interrogation regarding a witness's probationary status *per se* violates the confrontation clause. In *Davis*, the probationary status of a witness was relevant to the witness's bias because the witness, who testified to having observed the defendant's involvement in a burglary, was himself on probation for burglary, and thus had reason to believe that he might be a suspect in the crime for which the defendant had been charged. *See id.* at 310–11, 94 S.Ct. 1105. Here, there is no evidence that Pierce's probationary status involved an offense that was similar or relevant to those charged against Beardslee, nor is there evidence that Pierce's probationary status rendered him particularly subject to undue pressure from the authorities or the Government, as might be the case if Pierce himself remained vulnerable to prosecution.

## II. Cross–Examination of Venable

■ At Beardslee's first trial, Venable was cross-examined regarding traffic violations he had committed in Colorado for driving without a valid license and without insurance. Venable had committed these violations after entering into his plea agreement but before the first Beardslee trial. Venable had failed to pay the fine imposed for the traffic violations, and a warrant had been issued in Colorado for his arrest. Under the terms of his plea agreement, if Venable broke any laws, the Government could, *inter alia,* reinstate the conspiracy charge or cause his release to be revoked. Prior to the second trial, the Government moved *in limine* to exclude evidence of Venable's Colorado traffic citations. The district court granted the Government's motion, ruling that Venable could be asked only "whether or not he believes there is a benefit due him for his testimony."

The district court's limitation on cross-examination of Venable in the second trial does not amount to a confrontation clause violation under *James*'s three-part inquiry. Although evidence of Venable's traffic violations is not wholly irrelevant to the issue of whether he would have felt vulnerable to pressure from the Government, the marginal relevance of such evidence would likely have been outweighed by the risk of confusing the jury. Moreover, the jury had sufficient evidence to assess Venable's credibility, as he admitted on cross-examination that he didn't "live up to" his obligation under the plea agreement to "obey all laws," and that he believed that he had not been sanctioned for violating his obligations because he continued to cooperate with the Government. Under these circumstances, the specific manner in which Venable had failed to "obey all laws" would have been largely irrelevant to his credibility.[2]

Accordingly, the district court did not err in barring cross-examination of Venable regarding his Colorado traffic citations.

## III. Limitation Period for Count Three

■ On September 21, 1995, Beardslee moved to dismiss Count Three of the superseding indictment—use of fire to commit mail fraud, in violation of 18 U.S.C. § 844(h).[3] She contended that the charge was barred by the five-year statute of

---

2. The instant case clearly is distinguishable from *United States v. Steinberg,* 99 F.3d 1486 (9th Cir.1996) (disapproved of on other grounds by *United States v. Foster,* 165 F.3d 689 (9th Cir.1999)). *Steinberg* concerns, *inter alia,* whether a *Brady* violation occurs when exculpatory evidence is suppressed or otherwise left undisclosed. *See id.* at 1489 (describing standard for determining a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).

In *Steinberg,* the Government had failed to disclose two pieces of information regarding its confidential informant and key witness against the defendant: (1) the informant/witness had been involved in ongoing criminal activity involving counterfeit currency around the time that he met the defendant and discussed a possible purchase of cocaine with counterfeit currency provided by the defendant; and (2) the informant/witness owed money to the defendant. *See id.* at 1488–89. On appeal, this court held that a new trial was required under *Brady,* because the undisclosed information was both exculpatory of the defendant and material to the issue of his guilt. *See id.* at 1489–92.

Unlike the criminal activity undertaken by the informant/witness in *Steinberg,* however, Venable's Colorado traffic citations do not relate to the underlying crimes of arson and mail fraud, and cannot be understood in any sense as potentially exculpating Beardslee. Furthermore, in *Steinberg,* the informant/witness's criminal activity was material in part because there was little evidence to corroborate his testimony regarding his transactions with the defendant. *See id.* at 1491. Here, Venable's testimony regarding Beardslee was corroborated by the testimony of other witnesses, as well as by the taped telephone conversations and other evidence.

3. Section 844(h) authorizes punishment of any person who "uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States." 18 U.S.C. § 844(h). Beardslee was charged with using fire to commit the felony of mail fraud in violation of 18 U.S.C. § 1341.

limitation in 18 U.S.C. § 3282,[4] because the superseding indictment was not filed until September 13, 1995, almost six years after December 10, 1989, the date on which the indictment alleges the warehouse fire occurred. The district court denied the motion.

■ A limitation period begins to run only when all the elements of the underlying offense have been committed. *See United States v. Drebin*, 557 F.2d 1316, 1333 (9th Cir.1977). Count Three of the superseding indictment falls within the limitation period because a violation of section 844(h) is not complete until *both* a fire and a "felony which may be prosecuted in a court of the United States" have occurred. In the instant situation, mail fraud is clearly as much an element of Beardslee's section 844(h) violation as is the fire on which that fraud is premised; absent Beardslee's fraudulent use of the United States mails (or another federal felony), section 844(h) would not have been implicated at all, and she would have been charged only with arson and conspiracy.

■ Moreover, each mailing in furtherance of a prohibited scheme to defraud constitutes a separate mail-fraud violation. *See United States v. Poliak*, 823 F.2d 371, 372 (9th Cir.1987). A number of Beardslee's mail-fraud violations occurred after September 13, 1990—and within the five-year limitation period provided by 18 U.S.C. § 3282. Thus, even assuming that the filing of the original indictment did not toll the running of the limitation period until the filing of the superseding indictment, Beardslee nevertheless violated section 844(h) within a five-year period of time preceding September 13, 1995, the date on which the superseding indictment was filed.

Accordingly, Count Three of the superseding indictment was not barred by the statute of limitation.

## IV. *Motion to Suppress*

Shortly after the warehouse fire occurred on December 10, 1989, Beardslee consented to searches of the warehouse by authorities. On January 2, 1990, the ATF obtained a warrant to search the warehouse for "all business records relating to the operation of Natural Beverage Distributor [sic], including but not limited to sales invoices, supplier records, ledger cards, payroll receipts, bank accounts, and employee lists." Two days later, ATF agents executed the warrant, and took from the warehouse nine filing cabinets and seven boxes of business records, which the ATF stored at the Fort Bragg Police Department ("FBPD").

In December of 1991, the ATF began to close its investigation and contacted Beardslee to arrange for the return of the seized documents. In March of 1992, Beardslee signed and returned the property release form to the ATF. Shortly thereafter a friend of Beardslee retrieved selected documents from the FBPD, while leaving others behind.

In June of 1991, the judge in the ongoing civil litigation between Beardslee and Anheuser–Busch had ordered Beardslee to produce discovery in the form of business records. In October of 1992, Beardslee's attorney in the Anheuser–Busch litigation turned over to Anheuser–Busch copies of the records that Beardslee's friend had retrieved from the FBPD, and allowed Anheuser–Busch access to the documents that had been left behind at the FBPD.

In March of 1993, the Government reopened the investigation after receiving new information about the fire. Since that time, the only access the Government had to Beardslee's documents was through Anheuser–Busch pursuant to subpoena, or

**4.** Section 3282 provides, in pertinent part, that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282.

through the abandoned records at the FBPD.

█ On October 12, 1994, Beardslee submitted a pre-trial motion to the district court, seeking suppression of the evidence seized by the Government. In a written order, the district court found that the original warrant was insufficiently particular and constitutionally deficient, but denied Beardslee's motion to suppress, on the ground that the Government had an independent source for the evidence. We review de novo the district court's denial of a motion to suppress. *See United States v. Kemmish,* 120 F.3d 937, 939 (9th Cir. 1997).

█ The independent source doctrine allows the use of evidence that was improperly obtained, if that evidence ultimately or inevitably would have been discovered by lawful means. *See Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). An implication of this doctrine is that evidence that is initially seized improperly may be rendered valid if it is later obtained (or "reseized") independently from activities untainted by the initial illegality. *See Murray v. United States,* 487 U.S. 533, 542, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).

█ Here, the district court expressly found that "[t]he [G]overnment's decision to subpoena the documents from Anheuser–Busch, and to gather the abandoned records, was not prompted by the original unlawful search. The [G]overnment reopened the investigation only after obtaining new information in 1993." Indeed, in December of 1991, the ATF initiated the process of returning the seized documents to Beardslee because it was closing its investigation of the fire; the investigation was not re-opened until 1993, after Venable was arrested and confessed to being hired by Beardslee to burn her warehouse. Thus, the decision to subpoena Anheuser–Busch and access the documents at the FBPD did not derive from information obtained during the January, 1990, search and seizure. Moreover, the method by which the evidence was subsequently obtained—through subpoena and seizure of abandoned documents—was entirely proper. *See Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) (appropriation of abandoned property not unlawful).

Accordingly, the district court did not err in denying Beardslee's motion to suppress evidence, on the ground that the Government had an independent source for the evidence that was seized.

## V. *Consecutive Sentences*

The district court sentenced Beardslee to 27 months' imprisonment for each of Counts One, Two, and Four through Twenty–Two, all of the terms to run concurrently. The court also sentenced Beardslee to 60 months' imprisonment for Count Three, to run consecutively to the terms for Counts Four through Twenty–Two, but concurrently to the terms for Counts One and Two. We review statutory interpretation de novo. *See United States v. Neal,* 976 F.2d 601, 602 (9th Cir.1992).

Taken together, Beardslee's sentences present an apparent ambiguity. If the 27–month sentences for Counts One, Two, and Four through Twenty–Two are to run concurrently to each other, the 60–month sentence for Count Three cannot both run consecutively to the terms for Counts Four through Twenty–Two, and concurrently to the terms for Counts One and Two. It is thus unclear whether the district court intended the 60–month sentence for Count Three to run consecutively to all the other sentences, or concurrently to all the others.

█ What is clear, however, is the language of section 844(h) itself, which unambiguously provides that:

Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this

subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with *any* other term of imprisonment including that imposed for the felony in which the explosive was used or carried.

18 U.S.C. § 844(h) (emphasis added). Under the plain meaning of the statute's language, section 844(h) precludes a sentence imposed under section 844(h) from running concurrently to any other terms of imprisonment. Circuits that have addressed this issue support such a reading of section 844(h). *See, e.g., Sicurella v. United States,* 157 F.3d 177, 179 (2d Cir.1998).

Thus, regardless of what the district court intended, the 60–month sentence for Count Three must run consecutively to all the other sentences. Accordingly, we vacate the district court's imposition of the Count Three sentence running concurrently to those for Counts One and Two, and remand to the district court to impose a sentence for Count Three running consecutively to the terms for all other counts.

## VI. *Application of the Sentencing Guidelines for Conspiracy*

■ The Government argues that the district court erred in refusing to apply the 1992 Sentencing Guidelines to calculate the sentence for Count One; the district court found that the conspiracy was completed when the warehouse burned in 1989, and thus used the 1989 Sentencing Guidelines instead. The applicable provisions of the Sentencing Guidelines, U.S.S.G. § 2K1.4, were amended as of November 1, 1990. *See* United States Sentencing Guidelines Manual § 2K1.4 (Nov.1990) ("U.S.S.G."). The differences between the pre-amendment guidelines, which the district court applied, and the post-amendment guidelines are significant for the purposes of Beardslee's sentence. Pre-amendment sections 2K1.4(b)(1) and (2) correspond approximately to post-amendment sections 2K1.4(a)(1) and (2), although one important difference exists. Under both pre-amendment section 2K1.4(b)(1) and post-amend-

ment section 2K1.4(a)(1), an offense level of 24 applies if the defendant knowingly created a substantial risk of death or serious bodily injury. Under the pre-amendment section 2K1.4(b)(2), an offense level of 20 applies if the defendant recklessly endangered the safety of another. However, under post-amendment section 2K1.4(a)(2), an offense level of 20 applies if the defendant created a substantial risk of death or serious bodily injury (whether or not recklessly) *or* if the offense involved the destruction or attempted destruction of a structure other than a dwelling. Thus, under the post-amendment guidelines, Beardslee's base offense level would necessarily be at least 20 because the warehouse that was burned was a structure other than a dwelling.

■ The Government argues that the post-amendment guidelines should apply, even though the fire itself occurred on December 10, 1989 (pre-amendment), because Beardslee's indictment indicated that the conspiracy continued until April 1, 1993 (post-amendment). Normally, a district court is to apply the version of the Sentencing Guidelines in effect on the date of sentencing. *See United States v. Warren,* 980 F.2d 1300, 1304 (9th Cir.1992). However, an exception to this rule exists where application of an amended version of the guidelines would violate the Ex Post Facto Clause. *See id.* (citing *United States v. Castro,* 972 F.2d 1107, 1112 (9th Cir.1992)). If the underlying offense is a continuing offense, and continued after the relevant amendment has been made, the amended guidelines may be applied without offending the Ex Post Facto Clause. If, however, the underlying offense is a non-continuing offense that occurred before the amendment, or a continuing offense that was completed entirely before the amendment, the defendant must be sentenced under the relevant provisions of the guidelines in effect at the time the offense occurred. *See id.*

Conspiracy is a continuing offense. *See Castro,* 972 F.2d at 1112. Thus, if Beardslee's conspiracy continued after November 1, 1990, the post-amendment version of section 2K1.4 applies without Ex Post Facto Clause concerns. If, however, the conspiracy ended before November 1, 1990, the pre-amendment version of section 2K1.4 would apply. The relevant question, then, is whether the conspiracy at issue ended on December 10, 1989, when the warehouse burned, or continued until after November 1, 1990.

Count One of Beardslee's indictment described the underlying conspiracy as follows:

> Beginning in or about October of 1989, and continuing thereafter through on or about April 1, 1993 ... [defendant Beardslee and co-conspirators] did knowingly and willfully combine, conspire[,] and agree together and with others ... to maliciously damage and destroy, and attempt to maliciously damage and destroy, by means of fire and explosives, a building located at 930 North Franklin Street, Fort Bragg, California, which building was used in an activity affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 844(i).

Although the above paragraph makes reference only to the arson, the remainder of the indictment for Count One refers specifically to Beardslee's subsequent acts, stating that "[i]t was further a part of the conspiracy" for Beardslee to make false statements to the authorities, make false insurance claims, and compensate Venable for his role in the arson.

We affirm the district court's use of the 1989 Sentencing Guidelines because the district court reasonably found that the conspiracy was completed at the time the warehouse burned in December 1989. Of the subsequent acts described in the indictment, only the false insurance claims and compensation of Venable occurred after the effective date of the 1990 amendment. Both of these acts relate to whether Glover, who participated in the arson without Beardslee's prior knowledge, would be compensated for his role. These subsequent acts bear only a tenuous relationship to Beardslee's continuing involvement in the conspiracy. We see no reason therefore to disturb the district court's finding that the conspiracy was completed at the time the warehouse burned. *See United States v. Karlic,* 997 F.2d 564, 568 (9th Cir.1993). Sentencing Beardslee under the 1989 Sentencing Guidelines was proper because an application of the post-amendment guidelines would have violated the Ex Post Facto Clause.

Accordingly, the district court did not err in imposing a sentence under the version of section 2K1.4 in effect on December 10, 1989.

## VII. *Upward Adjustment for Knowingly or Recklessly Creating a Risk*

The Government further argues that the district court erred in declining to make an upward adjustment under the pre–1990–amendment version U.S.S.G. § 2K1.4(b), which requires an upward adjustment for knowingly creating a substantial risk of death or serious bodily injury, or for recklessly endangering the safety of another. We review for clear error the district court's findings regarding a sentencing enhancement. *See United States v. Karlic,* 997 F.2d 564, 568 (9th Cir.1993).

In *Karlic,* this court held that the analysis of whether a sentencing enhancement is warranted under section 2K1.4(b) requires two distinct inquiries:

> First, the court must ask whether the defendant's actions created a substantial risk of death or injury. This is an objective question that focuses on the circumstances surrounding the offense. A finding that there was a substantial risk of death or injury is a necessary predicate to the second, subjective, inquiry, which asks whether the defendant acted knowingly or recklessly in creating that risk.

*Id.* at 569. Because the guidelines do not define "knowingly" or "recklessly," this court applied the meanings of those terms under the Model Penal Code, and accordingly explained that a defendant acts knowingly with regard to section 2K1.4 if: (1) it is practically certain that her actions would cause a substantial risk of death or serious injury, and (2) she was aware of that fact. *See id.* Conversely, a defendant acts, at most, recklessly if it was not a practical certainty that her conduct would cause a substantial risk of death or serious injury, or where it was a practical certainty but the defendant was not aware of that fact. *See id.* at 570.

In light of this standard, the district court did not clearly err in finding that Beardslee did not act knowingly or recklessly within the meaning of section 2K1.4. Beardslee was doubtless aware that there was a possibility that her actions—or the actions of Venable, under her direction—would cause a substantial risk of death or serious bodily injury. However, a possibility, even a considerable one, is not the same as a "practical certainty," and here it was not practically certain that the burning of Beardslee's warehouse would create a substantial risk of death or injury.

The arson occurred in the middle of the night and, although the warehouse was not entirely isolated, it was located in a non-residential area and was not immediately adjacent to its neighboring buildings. The considerable disparity between the circumstances of the instant case, and those of cases in which this court found a defendant's actions to be practically certain to create a substantial risk of death or serious injury, supports clearly the district court's decision not to make an upward adjustment. *See, e.g., Karlic*, 997 F.2d at 570 (defendant was aware that neighboring residents were practically certain to be present during time of explosion, and that

people did in fact use depositories located in the building to be destroyed, even in the middle of the night); *United States v. Bos,* 917 F.2d 1178, 1182 (9th Cir.1990) (defendant attempted to blow up a store near public streets and other businesses with pedestrian access); *see also United States v. Bader,* 956 F.2d 708, 710–11 (7th Cir. 1992) (defendant pipe-bombed house that he knew to be occupied); *United States v. Wilson,* 927 F.2d 1188, 1190 (11th Cir. 1991) (defendant set fire with multiple points of origin thirty-five feet from an inhabited apartment complex).

Accordingly, the district court did not clearly err in declining to make an upward adjustment under the pre–1990–amendment version of U.S.S.G. § 2K1.4(b).

## VIII. *Obstruction of Justice*

■ Finally, the Government argues that the district court erred in stating, without elaboration, that it would not make a factual finding that an obstruction-of-justice enhancement, pursuant to U.S.S.G. § 3C1.1,[5] should be applied. The district court's application of the Sentencing Guidelines to the facts of a particular case is reviewed for an abuse of discretion. *See United States v. Aguilar–Ayala,* 120 F.3d 176, 177–78 (9th Cir.1997).

The application notes to section 3C1.1 provide a non-exhaustive list of examples of types of conduct to which the enhancement applies, which list includes committing perjury, providing materially false information to a judge, and providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the offense at issue. The application notes explain, however, that "[a] defendant's denial of guilt (other than a denial of guilt under

---

5. The applicable version of section 3C1.1 provides that:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the in-

vestigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (Nov.1997).

390

oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision." Furthermore, the defendant's testimony and statements should be evaluated in the light most favorable to her. *See* U.S.S.G. § 3C1.1, comment., n.1.

When we consider Beardslee's testimony and statements in the light most favorable to her, we cannot say that the district court abused its discretion when it declined to enhance Beardslee's sentence for obstruction of justice. Beardslee's in-court statements, and her statement to the authorities that she suspected Anheuser-Busch to be the arsonist, do not constitute a significant obstruction of or impediment to the investigation within the contemplation of the Sentencing Guidelines. *Cf. United States v. McNally*, 159 F.3d 1215, 1217 (9th Cir.1998) (not abuse of discretion to enhance sentence under section 3C1.1 when defendant's concealment of child from authorities created actual impediment to kidnaping investigation).

Accordingly, the district court did not err in declining to enhance Beardslee's sentence pursuant to section 3C1.1 for obstruction of justice.

### Conclusion

For the foregoing reasons, we affirm the decision of the district court with regard to all issues except the sentence for Count Three running concurrently to the sentences for Counts One and Two; as to that issue, we vacate the sentence imposed by the district court and remand for the court to impose a sentence for Count Three running consecutively to all other sentences.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**