**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-50389 |
| Plaintiff - Appellee, | D.C. No. 2:10-cr-00760-CAS-1 |
| v. | |
| MARCO JOSHUA PEREZ, AKA Jack Mario Orfalina, AKA Shy, AKA Shy boy, AKA Shy One, AKA Victor Wakey, AKA Wacky, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted January 7, 2013
Pasadena, California

Before: CANBY, REINHARDT, and WARDLAW, Circuit Judges.

Marco Joshua Perez pled guilty to possession of methamphetamine with

intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). His

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

plea was conditioned on his right to appeal the district court's denial of his motions to suppress evidence recovered from a search of his truck and subsequently of his home. We hold that the district court erred in determining that the consent to search Perez's vehicle was voluntary. The district court made no further finding with respect to whether the agents would have gone to Perez's home had they not seen the evidence seized during the illegal search. Because a hearing is necessary to determine whether this illegal search prompted the officers' visit to Perez's home, we remand to the district court for further findings on this issue.[1]

### Involuntary Consent

As our precedent makes clear, the "government bears the heavy burden of demonstrating that the consent was freely and voluntarily given." *United States v. Chan–Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997) (citation omitted). The government did not meet that burden here. We consider five factors to determine whether consent was voluntarily given: "(1) whether the person was in custody; (2) whether the officers had their guns drawn; (3) whether a *Miranda* warning had been given; (4) whether the person was told that he had the right not to consent; and (5) whether the person was told that a search warrant could be obtained."

---

[1] Because we reverse on the issue of involuntary consent and remand for determination of whether the evidence seized thereafter was a fruit of the illegal vehicle search, we do not reach the other issues raised on appeal.

2

*United States v. Reid*, 226 F.3d 1020, 1026 (9th Cir. 2000) (citation omitted). The district court did not engage in an analysis of each of these five factors, but it nonetheless found the consent given by the driver of Perez's truck, Garcia, to have been voluntarily given. An analysis of these factors makes clear, however, that Garcia's consent was involuntary and the search was, therefore, illegal.

As to the first factor, Garcia may not have been under arrest in all respects, but he was de facto in custody because he was ordered out of the vehicle, frisked, seated, and forbidden to rise. He was told, "You can't stand up because we[']re ordering you to sit down." *See United States v. Curtis*, 568 F.2d 643, 646 (9th Cir. 1978) ("If the person reasonably believes that he cannot leave freely, he is considered in custody[.]") (quoting *United States v. Luther*, 521 F.2d 408, 410 (9th Cir. 1975)). As to the second factor, Garcia testified that when he was asked to step out of the vehicle, he saw "guns drawn by uniform[ed] police officers." The third and fourth factors favor a finding of involuntariness because Garcia was not advised of his right to refuse to consent or given a Miranda warning. He was also denied his right to call his lawyer, despite his repeatedly asking to do so. Perez's case meets four of the five factors. In *Reid*, this court found consent to be involuntary on facts very similar to this case: "the officers ordered [the individual] up against the sliding glass door, placed him in a spread eagle position, frisked

3

him, and then handcuffed him[,] . . . at least one officer had his gun drawn[,] . . . [and] the officers neither read [the individual] his *Miranda* rights nor informed him that he had the right not to consent to the search." 226 F.3d at 1027. In light of *Reid* and the totality of the circumstances, Garcia's consent was involuntary and the resulting search of Perez's truck illegal. The district court clearly erred in concluding otherwise.

## Fruits of the Illegal Search

Because the consent to the vehicle search was involuntary, we must next determine what, if any, evidence should be suppressed as a fruit of the illegal search. The only evidence directly obtained as a result of that search was Perez's home address and Garcia's cell phone. Because the police were also able to obtain Perez's address from the "independent source" of checking the registration of the vehicle, the address need not be suppressed. *United States v. Beardslee*, 197 F.3d 378, 386 (9th Cir. 1999). Nor does Perez have standing to challenge the $3,976 in cash and the criminal case number seized from Garcia's person. The contrary is true, however, of the photographs and text messages from the cell phone indicating that drug transactions were in progress. This evidence was seized and searched during the illegal search of Perez's truck and, thus, constitutes "the fruit of the poisonous tree."

4

Perez seeks the suppression of the evidence seized from his home. This evidence was obtained after the officers went there, according to officer Segura's declaration, in order to "ask him if he gave Garcia permission to be in possession of his vehicle and to see if he would give [the officers] consent to search his residence for drugs." The officers' suspicion that Perez might have drugs at his home seems to have arisen, at least in part, as a result of their seeing the incriminating photographs and text messages on Garcia's phone.

In *Wong Sun v. United States*, the Supreme Court made clear that in determining the "fruit of the poisonous tree" question, we ask "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." 371 U.S. 471, 488 (1963) (citation omitted). In cases in which we deal with evidence obtained indirectly, as here, "we have stated the test to be whether the illegal activity tends to *significantly direct the investigation* to the evidence in question." *United States v. Chamberlin*, 644 F.2d 1262, 1269 (9th Cir. 1980) (citations omitted) (emphasis added); *see also United States v. Davis*, 332 F.3d 1163, 1171 (9th Cir. 2003). The record before us does not disclose whether the illegally seized evidence from

Garcia's phone "tend[ed] to significantly direct the investigation" to the search of Perez's home. *Chamberlin*, 644 F.2d at 1269 (citations omitted).

The Supreme Court addressed similar circumstances in *United States v. Murray*, 487 U.S. 533 (1988). It explained that a search pursuant to a warrant was not a "genuinely independent source . . . . if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry." *Id.* at 542. Therefore, it remanded for a factual determination as to whether the officers would have sought a search warrant regardless of the illegal entry. *Id.* at 543-44; *see also United States v. Duran-Orozco*, 192 F.3d 1277, 1281 (9th Cir. 1999) (remanding for a determination of whether agents would have sought a search warrant absent their prior illegal search).

In this case, we cannot determine from the record to what extent the officers' decision to go to Perez's home was motivated by the evidence seized from the illegal search of Perez's vehicle, and thus, "whether the illegal [vehicle search] tend[ed] to significantly direct the investigation to [Perez's home]." *Chamberlin*, 644 F.2d at 1269 (citations omitted). The district court did not consider this issue or make any factual findings regarding whether the illegally seized evidence prompted the officers' decision to go to Perez's home because it found the vehicle search to be lawful. Distr. Ct. Op. at 10 n.9 ("Because the Court finds that the

6

search of defendant's vehicle . . . was conducted pursuant to lawful consent, the Court does not reach the question of whether the search of defendant's residence and statements he made during that search must be suppressed because they are the poisonous fruits of the vehicle search."). In short, our review depends on both a factual finding and a legal determination that the district court did not make.

Accordingly, we remand to the district court to determine whether the officers were prompted to go to Perez's home by the evidence uncovered as a result of the illegal search of his vehicle, specifically the photographs and text messages relating to drugs on Garcia's cell phone. If the illegally seized evidence "tend[ed] to significantly direct" the officers' decision to go to Perez's home, the evidence seized in the search of that home must be suppressed. *Chamberlin*, 644 F.2d at 1269 (citations omitted).

**REMANDED.**